698 P.2d 694

**STATE of Arizona, Respondent,**

v.

**Darick Leonard GERLAUGH, Petitioner.**

**No. 5216–2–PC.**

Supreme Court of Arizona, En Banc.

April 23, 1985.

---

**4. "Sec. 5. Effective date.**

"This act is effective from and after August 30, 1984." 1984 Arizona Session Laws 881 Ch. 237, § 5.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Crane McClennen Asst. Attys. Gen., Phoenix, for respondent.

John Foreman, Cunningham, Tiffany & Hoffmann, P.A. and James Kemper, Phoenix, for petitioner.

HAYS, Justice.

After a joint trial, petitioner Darrick Leonard Gerlaugh and codefendant Joseph Albert Encinas (*State v. Encinas,* 132 Ariz. 493, 647 P.2d 624 (1982)), were convicted of first degree murder, A.R.S. § 13–1105, armed robbery, A.R.S. § 13–1904, and kidnapping, A.R.S. § 13–1304. Petitioner received concurrent sentences of 21 years on the armed robbery and kidnapping offenses. These sentences were to run consecutively with a 35-year to life sentence for probation violation. For the murder, petitioner was sentenced to death. Petitioner's convictions and sentences were affirmed on appeal. *State v. Gerlaugh,* 134 Ariz. 164, 654 P.2d 800 (1982), supplemental opinion, 135 Ariz. 89, 659 P.2d 642 (1983). Petitioner sought post-conviction relief. *See* 17 A.R.S. Rules of Criminal Procedure, rule 32. The trial judge presided over the rule-32 hearing, pursuant to our order in *State ex rel. Corbin v. Superior Court,* 138 Ariz. 500, 675 P.2d 1319 (1984). After an evidentiary hearing, the trial court denied petitioner's rule-32 petition. We have jurisdiction. Ariz. Const. art. 6, § 5(3); A.R.S. § 13–4031; 17 A.R.S. Rules of Criminal Procedure, rule 32.9(c). We affirm. We address the following issues related to whether petitioner was denied effective assistance of counsel at his sentencing:

1. Should the modification of the *Watson* standard of "minimal competence" in representation announced in *State v. Nash* be applied retroactively?

2. . What is the proper test for ineffective assistance of counsel in capital sentencing proceedings?

3. Did trial counsel render so little assistance that prejudice must be presumed?

4. Did the trial court apply the wrong standard of review in denying petitioner's rule-32 petition?

5. Does the trial court's finding, that petitioner failed to establish ineffective assistance of counsel at the rule-32 hearing, have significant probative value?

6. Did trial counsel render ineffective assistance by failure to argue against one aggravating circumstance?

7. Did trial counsel render ineffective assistance by failure to present additional evidence of—and/or argue for— the alleged mitigating circumstances implicated by petitioner's

 (a) impaired mental condition?

 (b) age?

 (c) intoxication?

 (d) good character?

 (e) greater punishment in contrast to his codefendant's?

 (f) cooperation with the police?

8. Did trial counsel acquiesce in the state's recommendation of the *death* penalty?

## FACTS

On the evening of January 24, 1980, petitioner and codefendants Joseph Encinas and James Matthew Leisure (Memorandum Decisions Nos. 5217, 5246 & 5264 (consolidated), filed September 13, 1982), had a few drinks at the home of Shirley Jones, a friend, who lived in Chandler. They decided to hitchhike to Phoenix and rob whomever offered them a ride. Petitioner was the only armed member of the trio. At about 11:30 p.m. Scott Schwartz, the victim, was driving in the vicinity. Schwartz had an injured leg and walked with the aid of a leg brace and crutches.

Schwartz picked up the three defendants. Soon afterwards, petitioner pointed a gun at Schwartz and forced him to drive to a deserted road near a canal on the outskirts of Mesa. There, the three men forced the victim out of his car. Petitioner pointed the gun at Schwartz and demanded money. Schwartz grabbed the gun from petitioner. While attempting to escape, the victim pointed the gun at Leisure and pulled the trigger. The gun did not fire. "You fucked up" petitioner exclaimed, "There's no bullets in the gun." The three men knocked Schwartz to the ground, where they beat and kicked him for ten to fifteen minutes. Petitioner then announced that they would have to kill Schwartz to prevent him from identifying them. Petitioner ordered Encinas and Leisure to hold Schwartz on the road so he could run the victim over with the car. The victim succeeded in dodging the car several times by diving into an adjoining canal. Petitioner finally ran over Schwartz with the victim's Lincoln Continental and felt the impact of the victim's body with the car. Petitioner ran over the victim two more times and struck the victim's head with the car bumper at least one time. At one point, petitioner positioned the car's left rear wheel on top of Schwartz and floored the accelerator. Although badly hurt, the victim was still alive and was writhing in pain on the roadside. He began to plead with his assailants to tell him the reason for their attack. Petitioner took a screwdriver from the rear of the car and stabbed the victim in the head, neck and shoulders at least twenty times. Leisure also stabbed the victim ten to twenty times.

A pathologist testified that these various assaults caused several injuries, any of which would have been fatal. The victim suffered numerous fractures, puncture wounds and internal injuries from his head to his midsection. His entire body was covered with bruises and abrasions. The three men dragged Schwartz's body off the road to an adjoining field and covered it with alfalfa. Petitioner kept all of the money taken from the victim.

The three men returned to the road and drove away in Schwartz's car. When the car broke down, they resumed hitchhiking. They were picked up by Harry Roche in his pickup truck at about 2:00 a.m. Petitioner leveled the gun at Roche and forced him to make an apparently random series of turns. Finally, petitioner ordered Roche to pull off to the side of the road. Roche at first refused and complained that the roadside was too muddy at that particular point to stop. When petitioner pointed the gun at his head, however, Roche stopped the truck. Petitioner, Encinas, and Leisure got out of the truck. Roche quickly put the truck in gear and sped away. Petitioner later admitted that he intended to rob Roche. Several days later, Encinas related these events to a friend who then went to the police. The three men were arrested; all of them confessed. At his interview with the police, petitioner expressed no remorse about killing Schwartz. When asked how he felt after killing the victim, he replied, "How do you feel when you kill [wild] game?" In sentencing petitioner to death, the trial judge declared that, "This offense absolutely demonstrates this defendant's total lack of regard for human life or human suffering."

## I. THE APPLICATION OF THE NEWLY MODIFIED *WATSON* STANDARD TO POST-CONVICTION CASES

██ Petitioner contends that he was denied effective assistance of counsel. The

burden of proof is on the defendant to show ineffective assistance of counsel by a preponderance of the evidence. *State v. Prince*, 142 Ariz. 256, 260, 689 P.2d 515, 519 (1984). Traditionally, proving ineffective assistance of counsel in Arizona required a showing that the proceedings were reduced to a farce, sham or mockery of justice by counsel's performance. *See State v. Garcia*, 133 Ariz. 522, 652 P.2d 1045 (1982). More recently, a two-pronged test for ineffective assistance of counsel has been employed. The first prong of this test originally required minimal competence in representation. *State v. Watson*, 134 Ariz. 1, 4–5, 653 P.2d 351, 354–55 (1982). Following *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have recently modified the first prong to require "deficient representation." *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985). There is deficient representation only if, after examining all the circumstances existing at the time of the alleged act of ineffective assistance, we conclude that counsel's actions fell below objective standards of reasonable representation measured by prevailing professional norms. *Id.* The defendant must specify the acts or omissions allegedly constituting ineffective assistance. *Strickland v. Washington, supra*, — U.S. at —, 104 S.Ct. at 2066, 80 L.Ed.2d at 694. The accused must also overcome a "strong" presumption that the challenged action was sound trial strategy under the circumstances. *State v. Nash, supra*, 143 Ariz. at 398, 694 P.2d at 228; *Strickland v. Washington, supra*, — U.S. at —, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694. Disagreements in trial strategy will not support a claim of ineffective assistance so long as the challenged conduct has some reasoned basis. *State v. Meeker*, 143 Ariz. 256, 260, 693 P.2d 911, 915 (1984); *State v. Prince, supra*, 142 Ariz. at 260, 689 P.2d at 519.

■ The second prong of our ineffective assistance of counsel test requires that there be a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984) (quoting *Strickland v. Washington, supra*, — U.S. at —, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). In *Lee*, we defined a "reasonable probability" as less than "more likely than not but more than a mere possibility." *State v. Lee, supra*. According to *Strickland, supra*, this is a sufficient probability of a different result that it indicates serious breakdown in the adversarial process which, in turn, undermines our confidence in the actual outcome of the case. *Strickland, supra*, — U.S. at —, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 699–700.

We must also discuss the application of these standards. We have held that the first prong, the *Watson* standard of "minimal competence," is to be applied prospectively to cases tried or pending on appeal after the effective date of the *Watson* decision (October 18, 1982). *See State v. Nunez*, 135 Ariz. 257, 660 P.2d 858 (1983). In *Nash*, we did not expressly announce whether this modified standard was to be applied retroactively or only prospectively. *See State v. Nash, supra*, 143 Ariz. at 399, 694 P.2d at 229. As to the second prong, in *State v. Lee* we announced that we would apply that standard retroactively to *Watson* cases, but not to the pre-*Watson* "farce, sham or mockery" cases. *See State v. Lee, supra*, 142 Ariz. at 219, 689 P.2d at 162 n. 5; *see also State v. Goswick*, 142 Ariz. 582, 586, 691 P.2d 673, 677 (1984) (standard applied retroactively to a *Watson* era case).

Petitioner asserts that the modified first prong of our test for ineffective assistance of counsel announced in *Nash* should be applied retroactively to his case, which arose under the unmodified *Watson* standard. We disagree.

■ There is no constitutional requirement that a judicial decision announcing new constitutional guidelines be applied prospectively or retroactively. *See Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608 (1965); *State v. Dosztal*, 144 Ariz. 242, 243, 697

P.2d 325, 326 (1985). To determine whether such new constitutional principles should be applied retroactively, a court must consider: (a) the purpose to be served by the new standards; (b) the extent of reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of these standards. *See Solem v. Stumes,* —— U.S. ——, ——, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579, 586 (1984); *State v. Dosztal, supra.*

■ Complete retroactivity is most appropriate where a new constitutional principle is designed to enhance the accuracy of criminal trials. *Solem v. Stumes, supra,* —— U.S. at ——, 104 S.Ct. at 1342, 79 L.Ed.2d at 587; *State v. Dosztal, supra,* 144 Ariz. at 244, 697 P.2 at 327, (retroactive application most appropriate where it affects the integrity of the fact-finding process or otherwise there is a clear danger of convicting the innocent).

■ Similarly, one important aim of standards requiring effective assistance of counsel is to insure that the state's case is subjected to meaningful adversarial testing so that the innocent are not convicted. *See Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 699–700. We do not believe, however, that retroactive application of the *Nash* standard is warranted.

We can find no cases wherein any court has decided whether or not to apply the *Strickland* standards retroactively to a post-conviction case. *Cf. Ricalday v. Procunier,* 736 F.2d 203 (5th Cir.1984) (*Strickland* applied to a case pending on appeal); *Ex parte Daniel,* 459 So.2d 948 (Ala.1984) (*Strickland* applied to a case pending on appeal). Many courts have applied standards relating to effective assistance of counsel only prospectively. *See State v. Nunez, supra; Seales v. State,* 580 S.W.2d 733 (Mo.1979) ("minimal competence" standard applied prospectively); *Phillips v. State,* 650 P.2d 876 (Okla.Cr.App.1982) ("minimal competence" standard applied prospectively); *cf. Fields v. United States,* 466 A.2d 822, 826–28 (D.C.App.1983) (inap-

propriateness of applying new standards relating to effective assistance of counsel retroactively to post-conviction cases).

The purpose of the *Nash* modification of the first prong of our ineffective assistance of counsel test was to provide a "more objective" standard for determining attorney performance and to insure uniformity between state and federal standards in this area. *State v. Nash, supra,* 143 Ariz. at 397, 694 P.2d at 227. We noted in *Nash,* however, that the modified and unmodified standards were "similar." *Id.* Precisely because the differences between these standards is scarcely outcome determinative, we find no compelling need to apply the newly modified standard to the present case. *See Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 699 (cases decided under different standards need not be reassessed in the light of the changes in the test for ineffective assistance of counsel); *Trapnell v. United States,* 725 F.2d 149, 153 (2nd Cir. 1983) (after years of applying the "farce, sham and mockery" and "minimal competence" tests, court has never found a case that turned on the choice of standard). Because we do not believe that application of the newly modified standard is warranted, given the burden on the administration of justice of reassessing cases already decided under the unmodified standard, we decline to apply it retroactively. We shall instead apply the *Nash* modification prospectively—as we did in announcing the *Watson* standard—to cases tried or pending on appeal after the effective date of the *Nash* decision (January 9, 1985). We therefore find no error in the application of the unmodified *Watson* first prong in this case.

## II. THE TEST FOR INEFFECTIVE ASSISTANCE OF COUNSEL IN CAPITAL SENTENCING PROCEEDINGS

■ The requirement of effective assistance of counsel applies to the sentencing phase of a capital case. *State v. Roscoe,* 145 Ariz. 212, 224, 700 P.2d 1312, 1324; *State v. Carriger,* 132 Ariz. 301, 645 P.2d

816 (1982). In *Carriger*, we stated that counsel displays "incompetent representation"—the first prong of our test—when he fails to "challenge the admission of aggravating evidence where reasonably possible and to present available pertinent mitigating evidence." *State v. Carriger, supra,* 132 Ariz. at 304, 645 P.2d at 819; *State v. Roscoe, supra,* 145 Ariz. at 224, 700 P.2d at 1324.

■ As to the second prong of our test, petitioner contends that to show ineffective assistance of counsel in capital cases, there should be no requirement of prejudice. The United States Supreme Court, however, has required a showing of prejudice. In *Strickland v. Washington, supra,* the Court announced that the defendant must show that:

> there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. We have similarly required such a showing of prejudice in capital sentencing proceedings. *See State v. Roscoe, supra,* 145 Ariz. at 147–148, 700 P.2d at 1326–1327; *State v. Carriger,* 143 Ariz. 142, 148, 692 P.2d 991, 997 (1984). We reject petitioner's contention.

### III. TRIAL COUNSEL WAS NOT A "NEUTRAL OBSERVER"

■ Proof of prejudice is, however, unnecessary under certain circumstances in an ineffective assistance of counsel case. If the defendant is denied counsel at a critical stage of trial or if counsel fails to subject the state's case to meaningful adversarial testing, then prejudice is presumed. *See United States v. Cronic,* —— U.S. ——, ——, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984); *State v. Nash, supra,* 143 Ariz. at 398–99, 694 P.2d at 228–29. It is clear that if counsel act as a neutral observer, then prejudice will be presumed. *State v. Carriger, supra,* 132 Ariz. at 304, 645 P.2d at 819.

■ Petitioner contends that trial counsel acted as a neutral observer. This is not a fair description. Trial counsel challenged two of the three aggravating circumstances found by the court. Counsel also argued for the mitigating circumstances of petitioner's age, impaired mental condition, good character, close family ties, and his associations at the time of the crime. As to this last mitigating circumstance, petitioner's attorney argued that Matthew Leisure was a bad influence who induced petitioner to commit some violent crimes. Petitioner's mother and father were presented as character witnesses at the presentence hearing. Numerous witnesses were contacted by trial counsel and synopses of interviews with six of petitioner's friends were incorporated into the presentence report. There were only two viable mitigating circumstances which trial counsel failed to present to the trial judge. Because petitioner's codefendants had not been sentenced at the time of his sentencing, the trial judge did not consider in mitigation the lesser sentences given to petitioner's codefendants. It is unclear whether the trial judge considered petitioner's confession as mitigating evidence of his cooperation with the police. The trial judge was, however, undoubtedly aware of petitioner's confession. We hold these omissions to be harmless error in this case. (See our discussion of these mitigating factors, *post* at 708–710).

The present case is plainly distinguishable from other cases where we have presumed prejudicial ineffective assistance of counsel. *See State v. Schultz,* 140 Ariz. 222, 223–24, 681 P.2d 374, 375–76 (1984) (defense counsel admitted that he failed to interview from 20 to 30 witnesses); *State v. Perkins,* 141 Ariz. 278, 295, 686 P.2d 1248, 1265 (1984) (substitute counsel at sentencing, after stating he was unfamiliar with the case, had nothing to say on defendant's behalf); *State v. Cruz,* 137 Ariz. 541, 548–50, 672 P.2d 470, 477–78 (1983) (counsel refused to actively participate in

trial after his motion to disqualify the judge was refused); *State v. Carriger, supra,* 132 Ariz. 303, 645 P.2d 818 (counsel refused to present any evidence or otherwise participate at sentencing); *State v. Myles,* 389 So.2d 12, 30 (La.1979) (counsel's tepid and virtually nonexistent representation at sentencing consisted of not challenging the alleged aggravating circumstances, mentioning briefly only one mitigating circumstance where others existed, and generally acting like a neutral observer). *Cf. State v. Smith,* 140 Ariz. 355, 681 P.2d 1374 (1984) (prejudice presumed because of the "excessive if not crushing" caseload imposed on public defenders in Mohave County).

### IV. THE STANDARD OF REVIEW IN RULE-32 PROCEEDINGS

■ The trial judge who originally sentenced petitioner to death presided over his rule-32 hearing. *See* 17 A.R.S. Rules of Criminal Procedure, rule 32.4(c). Petitioner asserts that the trial court used the wrong standard of review in denying his rule-32 petition. We disagree. According to petitioner, the trial judge used the subjective standard that the evidence presented would not have changed his mind. The correct, objective standard is whether counsel (1) displayed incompetent representation, and (2) whether but for this incompetent representation there was a reasonable probability that the death sentence would not have been imposed. *See State v. Watson, supra; State v. Lee, supra.* The trial court never used language that would suggest this confusion in stating its verdict. Petitioner does not refer to any other evidence that would support such a claim. We find no error.

### V. THE PROBATIVE VALUE OF THE TRIAL COURT'S FINDINGS AT THE RULE-32 HEARING

■ Petitioner contends that the trial court's finding, that the evidence at the rule-32 hearing did not establish ineffective assistance of counsel, is entitled to little or no weight. Petitioner incorrectly cites *Strickland v. Washington, supra,* for this proposition. In *Strickland,* a state prisoner filed a federal habeas corpus petition in federal court alleging denial of his right to effective representation in a state criminal trial. *Id.* —— U.S. at ——, 104 S.Ct. at 2061–62, 80 L.Ed.2d at 687–88. The Supreme Court held that a federal judge correctly gave little weight to the testimony of a state trial judge regarding his subjective mental processes in imposing sentence. The court nowhere intimates that a trial court's objective determination, that the evidence does not establish a prima facie case for ineffective assistance of counsel, was not entitled to significant deference. The trial judge is present at the trial and can better evaluate the cogency of evidence. The trial judge can also better assess the relationship between counsel's defective performance and the verdict. *See Reeves v. Markle,* 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978). We reject petitioner's contention.

### VI. FAILURE TO CHALLENGE AGGRAVATING CIRCUMSTANCES

■ The trial court found three aggravating circumstances associated with the murder. Specifically, the trial court found that the murder was committed in an especially heinous, cruel or depraved manner, A.R.S. § 13–703(F)(6); that the murder was committed for pecuniary gain, A.R.S. § 13–703(F)(5); and that petitioner had been convicted of an offense for which a life sentence was imposable, A.R.S. § 13–703(F)(1).

Trial counsel challenged the first two aggravating circumstances. Petitioner alleges, however, that it was incompetent representation not to challenge the last mentioned aggravating circumstance. Petitioner does not dispute that he was convicted of robbery. He does not attack the validity of his confession to this crime, nor his subsequent plea of guilty. Petitioner does not deny that a life sentence was imposable for robbery. *See* A.R.S. §§ 13–641, 13–643 (repealed in 1978). We find no error.

## VII. FAILURE TO PRESENT ADDITIONAL EVIDENCE OF—AND/OR ARGUE FOR—MITIGATING CIRCUMSTANCES

### (A) *Mental Condition*

A.R.S. § 13–703(G)(1) provides that it shall be a mitigating circumstance that

> [t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired ... [even if] not so impaired as to constitute a defense to prosecution.

Petitioner contends that trial counsel acted unprofessionally by failing to order a psychological examination and present evidence of petitioner's impaired mental capacity at the time of the crime. We disagree.

▮▮▮▮ Petitioner specifically informed counsel before trial that he did not want to undergo a psychological examination because he did not want someone prying into his mind. Petitioner never indicated to defense counsel any time thereafter that he changed his mind about this decision. The Supreme Court has indicated that an attorney's decisions concerning representation can properly be influenced by his client's wishes. *See Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2066–67, 80 L.Ed.2d at 695–96. A defense attorney's deference to his client is especially appropriate where the defendant has a privacy interest at stake. *Cf.* 17 A.R.S. Rules of Criminal Procedure, rule 15.2(a)(8) (defendant cannot be forced to submit to a psychiatric or psychological examination). Defense counsel is obligated to insure that his client is aware of the consequences of such a decision. Petitioner has not, however, shown that trial counsel failed to render adequate advice regarding this decision.

Additionally, the record reveals that trial counsel suggested to the trial court at sentencing that a psychiatric examination of petitioner would be helpful in deciding punishment. Trial counsel conceded, however, that failure to order such an examination would likely not constitute reversible error. The trial judge rejected this suggestion.

Finally, petitioner was examined by Dr. Thomas O'Brien, a psychiatrist, who testified for the defense at the rule–32 hearing. The unsavory portrait of petitioner that emerges from Dr. O'Brien's testimony is that of a remorseless, bullying sociopath who victimizes others merely for the macho thrill of proving his "superiority" to his victims and his contempt for society's laws. According to Dr. O'Brien, petitioner killed for the status he received by being able to escape the consequences of his actions. Thus, petitioner bragged about stealing money from his own family because he was able to get away with the theft. We would be reluctant to find ineffective assistance for failure to present this evidence because of its obvious countervailing tactical dangers for petitioner. It is clear, at any rate, that petitioner has failed to prove any prejudice due to the failure to admit this evidence. There is no reasonable probability that it would establish a mitigating circumstance.

▮▮▮▮ The existence of a mere character or personality disorder like sociopathy is not alone sufficient to constitute a mitigating circumstance. *State v. Richmond,* 114 Ariz. 186, 197–98, 560 P.2d 41, 52–53 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), *reh'g denied,* 434 U.S. 1323, 98 S.Ct. 8, 54 L.Ed.2d 34 (1977). Such psychiatric evidence should be considered by the trial judge, however, because it may suggest some reason other than the nature of the disorder why the defendant should receive leniency, including a difficult family history. *See State v. McMurtrey,* 136 Ariz. 93, 102, 664 P.2d 637, 646 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983). The trial judge may refuse to find a mitigating circumstance so long as he considers this evidence. *See State v. Vickers,* 129 Ariz. 506, 516, 633 P.2d 315, 324–25 (1981). After hearing evidence concerning petitioner's psychological examination, the trial court concluded that this evidence did not estab-

lish a mitigating circumstance. The record supports this conclusion.

Dr. O'Brien testified that he could find no physiological cause for petitioner's sociopathy. *See State v. Brookover,* 124 Ariz. 38, 41–42, 601 P.2d 1322, 1325–26 (1979) (physiologically caused character disorder is sufficiently substantial to warrant leniency). There was also testimony that petitioner's home environment was considerably more normal than the usual environment that produces sociopathic personalities. The most notable similarity between petitioner's home environment and a typical sociopath's upbringing is that petitioner's parents had high expectations for their children. There is, however, no evidence that petitioner was abused as a child.[1] The record suggests that petitioner was raised in a relatively stable home environment.[2] The psychiatrist could not explain why the other children in the family did not display the violent and destructive tendencies shown by petitioner. According to the presentence report, petitioner simply rejected the basic support systems of a caring family, close family friends and community service agencies for a life of crime.[3]

The instant facts are clearly distinguishable from those in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). There, the defendant was not supervised by his alcoholic mother and was cruelly beaten by his father. *Id.* at 107, 102 S.Ct. at 872–73, 71 L.Ed.2d at 6. The present case is also clearly distinguishable from those cases in which this court has found the accused's mental condition to be a mitigating circumstance. *See State v. Graham,* 135 Ariz. 209, 213, 660 P.2d 460, 464 (1983) (21-year-old defendant without any prior violent offenses committed murder while his reasoning ability was clouded by drugs, a drug habit that began with prescription drug usage at the age of sev-

en); *State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980) (defendant was homosexually assaulted as a child and had a dismal home environment).

■ Such evidence of a troubled childhood is entitled to greater weight when the offender is a minor than when he is an adult. *See Eddings v. Oklahoma, supra,* 455 U.S. at 115, 102 S.Ct. at 876, 71 L.Ed.2d at 11; *State v. Clabourne,* 142 Ariz. 335, 348, 690 P.2d 54, 67 (1984) (defendant was 20 at the time of the crime); *State v. Gretzler,* 135 Ariz. 42, 58, 659 P.2d 1, 17 (1983) (defendant was 22 at the time of the crime). In the present case, petitioner was 19–½ years old at the time of the crime. He was also deemed mature for his age by the trial court. We see no reasonable possibility that this evidence would establish a mitigating circumstance. *Cf. Strickland v. Washington, supra,* — U.S. at ——, 104 S.Ct. at 2071, 80 L.Ed.2d at 701 (failure of counsel to present psychiatric testimony that established that defendant was under considerable emotional stress that did not rise to the level of a serious emotional disturbance insufficient to show prejudice given the impressive aggravating factors present in the case). We find no ineffective assistance of counsel.

### (B) *Age*

■ Defense counsel argued that petitioner's age should be considered as a mitigating circumstance. *See* A.R.S. § 13–703(G)(5). Petitioner alleges defective representation because his attorney did not introduce psychological evidence to prove petitioner's immaturity. At the rule-32 hearing, Dr. O'Brien testified that petitioner was immature. Despite this testimony, the trial judge reaffirmed his earlier ruling that petitioner was mature for his age and

---

**1.** One incident was recounted where his father put petitioner's hand into a flame when he was four years old. His father felt guilty about it afterward. There is, however, no allegation of any other child abuse.

**2.** Although petitioner's family moved frequently because his father was in the military, there is

no allegation or evidence of other substantial hardship.

**3.** According to Dr. O'Brien and the presentence report, petitioner quit very early in his various attempts at rehabilitation, including additional schooling and learning a trade.

that age was not a mitigating circumstance. Because we find no reasonable probability that admission of this evidence would have changed the result in sentencing petitioner, we believe there was no ineffective assistance of counsel.

■ Age is entitled to great weight as a mitigating circumstance, especially if the defendant is a minor. *See Eddings v. Oklahoma, supra,* 455 U.S. at 115, 102 S.Ct. at 877, 71 L.Ed.2d at 12 (mitigating circumstance that defendant was 16 years old and several years less mature than his chronological age); *State v. Valencia,* 132 Ariz. 248, 250–51, 645 P.2d 239, 241–42 (1982) (mitigating circumstance that defendant was 16 at the time of the offense warrants reducing sentence of death to life imprisonment). There is a special concern in such cases that the defendant "lacked substantial judgment in committing the crime" [because of his youth]. *State v. Johnson,* 131 Ariz. 299, 305, 640 P.2d 861, 867 (1982).

■ Petitioner's youth is not, however, a substantial mitigating factor. Petitioner was adjudged mature by the trial judge. *See State v. Gillies,* 135 Ariz. 500, 513, 662 P.2d 1007, 1020 (1983) (defendant's maturity lessens age as a mitigating circumstance). A court may also consider a defendant's age in the light of his prior criminal history. *State v. Roscoe, supra,* 145 Ariz. at 148, 700 P.2d at 1327; *State v. Graham, supra,* 135 Ariz. at 213, 660 P.2d at 464 (defendant's prior record revealed no predisposition toward violent crime); *State v. Ceja,* 126 Ariz. 35, 38, 612 P.2d 491, 494 (1980) (defendant's prior record revealed no tendency toward violent crime). Petitioner had previously been convicted of armed robbery at the age of 17. Four days before the murder in this case, petitioner participated in a similar armed robbery, kidnapping and attempted murder with codefendant Matthew Leisure. *See State v. Gerlaugh* [Memorandum Decision, No. 1 CA–CR 5309, filed June 10, 1982]. Petitioner and Leisure forcibly entered the car of Tobin Gentry at gunpoint. After driving to an isolated desert location, the victim was

forced to lie on his stomach. Petitioner told Leisure to "do a good job, make sure" and Leisure then pumped four bullets into the victim's back. Additionally, petitioner's murder was not a hasty impulsive act, but involved considerable deliberation and cruelty. *See State v. Libberton,* 141 Ariz. 132, 140, 685 P.2d 1284, 1292 (1984); *State v. Gillies, supra,* 135 Ariz. at 513, 662 P.2d at 1020; *cf. Eddings v. Oklahoma, supra,* 455 U.S. at 106, 102 S.Ct. at 872, 71 L.Ed.2d at 5 (murder involved an impulsive act).

Petitioner asserts that because of his youth he is a passive nonaggressive individual, who is easily influenced by others. He attributes the instant crimes to the psychologically dominating force of codefendant Matthew Leisure. According to the testimony of Dr. O'Brien, however, petitioner had a history of associating with wild companions. Petitioner sought out the company of lawbreakers for the thrill of hurting others and then escaping the consequences of his actions. The trial court specifically found that petitioner was the leader and not a follower in the commission of the murder. We find no reasonable probability that petitioner's age would be a mitigating circumstance sufficiently substantial to outweigh the aggravating circumstances of this horrible offense. There was, accordingly, no prejudice shown and no ineffective assistance of counsel.

### (C) *Intoxication*

■ Petitioner contends that defense counsel rendered ineffective assistance by failure to argue for petitioner's alleged intoxication at the time of the crime as a mitigating circumstance. Petitioner's intoxication was brought to the attention of the court. There were a number of references to petitioner's alleged intoxication in the presentence report. Also included in this report was a brief letter from petitioner to the judge in which he claims that he would never have committed the crimes were it not for his intoxication. The only evidence presented at trial of petitioner's intoxication was that petitioner and his codefendants had a few drinks at Shirley

Jones's house before the murder, and petitioner's statement that he had consumed one and one-half cases of malt liquor before arriving at her house.

There was, however, no evidence to corroborate petitioner's self-serving statement that he had consumed such a great amount of liquor. Shirley Jones testified that petitioner never mentioned drinking the malt liquor. She also testified petitioner did not appear intoxicated when he left her house shortly before the murder. In their statements to the police, neither of petitioner's codefendants mentions petitioner's consumption of the malt liquor. Dr. O'Brien testified that it would be consistent with petitioner's personality to exaggerate the amount of liquor he consumed. Dr. O'Brien further stated that he could form no opinion as to whether alcohol significantly impaired petitioner's mental condition on the night of the crime.

On appeal, petitioner has produced no new evidence on the critical issue as to whether petitioner consumed sufficient liquor to suffer significant mental impairment. The trial court in the rule-32 hearing acted well within its discretion in rejecting this unsubstantiated claim of intoxication. *State v. Gillies*, 142 Ariz. 564, 571, 691 P.2d 655, 662 (1984); *State v. James*, 141 Ariz. 141, 148, 685 P.2d 1293, 1300 (1984); *State v. Gillies, supra,* 135 Ariz. at 515, 662 P.2d at 1022; *State v. Jordan,* 126 Ariz. 283, 289, 614 P.2d 825, 831–32 (1980). We conclude that there was no ineffective assistance of counsel.

### (D) *Evidence of Good Character*

■ Petitioner first contends that trial counsel failed to contact three character witnesses. The record does not support this contention. Although trial counsel could not specifically recall contacting these witnesses, he did state that it was his practice to do so. One of these witnesses admitted that someone from trial counsel's office had contacted her. The other witnesses did not testify that they had not been contacted by trial counsel. Petitioner has simply failed to sustain his burden of showing that trial counsel failed to interview these witnesses.

Petitioner also asserts that trial counsel acted incompetently by not calling these character witnesses. It appears that trial counsel made a tactical decision not to present these witnesses. Trial counsel stated at the rule-32 hearing that due to the serious aggravating circumstances in this case, he did not want to present witnesses who would say nothing more than that petitioner was generally a good person.

The probative value of this character evidence is also, at best, unclear. Ramona Button testified at the rule-32 hearing that over a three-year period petitioner occasionally was a babysitter for her infant daughter. She further averred that petitioner never displayed any violent tendencies. It is not clear from the record, however, whether this babysitting was only a sporadic occupation or a steady job. Inez Sanders, a friend of the Gerlaugh family, testified that petitioner babysat for her two retarded nephews during one of his visits to her California home. Most of her association with petitioner, however, dates back from five to eight years before the crimes in this case. Bertha Parkhurst, another family friend of the Gerlaughs, recounted how petitioner cared for her pedigreed dogs and accompanied her to dog shows. Most of this activity, however, occurred at least from three to four years before the instant crimes. By contrast, trial counsel did present some character witnesses who may have been equally good. Petitioner's parents testified at the sentencing hearing. Trial counsel also summarized interviews with six of petitioner's friends from school and incorporated these interviews into the presentence report.

■ We flatly reject petitioner's assignment of error. The decision as to what witnesses should be called to testify on defendant's behalf is a strategic decision that will not normally support a claim of ineffective assistance of counsel. *See State v. Meeker, supra,* 143 Ariz. at 262, 693 P.2d at 917; *State v. Lee, supra,* 142

Ariz. at 214, 689 P.2d at 157. In particular, the decision whether to call cumulative character witnesses is precisely the kind of strategic choice that will not establish reversible error.

The lack of prejudice owing to this strategic decision is also clear. It is true that Mrs. Parkhurst averred that petitioner was "one of the finest kids in the world." Mrs. Sanders similarly recounted an incident in which petitioner moved a snail off the sidewalk to prevent others from walking on it. These character witnesses avowed that petitioner was kind to animals and children. However, all were at a complete loss to explain the brutal insensitivity petitioner displayed in his admittedly active role in this murder, as well as in his other violent criminal acts. The judge at the rule-32 hearing found that there was insufficient evidence for the court to find good character as a mitigating circumstance. We conclude that petitioner has failed to show prejudice owing to the failure to present these character witnesses at trial. *See Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2071, 80 L.Ed.2d at 701 (failure of counsel to present character witnesses whose testimony established only that they believed that defendant was a generally good person is insufficient to establish prejudice given the truly impressive aggravating circumstances of the crime). *See State v. [Raymond] Tison,* 129 Ariz. 546, 555, 633 P.2d 355, 365–66 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147, *reh'g denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982); (trial court properly rejected evidence of good character as a mitigating circumstance in the light of defendant's otherwise unexplained criminal conduct); *State v. [Ricky] Tison,* 129 Ariz. 526, 544–45, 633 P.2d 335, 353–54 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147, *reh'g denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982) (same holding); *State v. [Patrick] Poland,* 144 Ariz. 388, 407, 698 P.2d 183, 202 (1985) (trial court can refuse to find character evidence as a mitigating circumstance if inconsistent with defendant's criminal acts). There was no ineffective assistance of counsel.

(E) *Unequal Treatment of Codefendants*

Codefendant Joseph Encinas received a life sentence without possibility of parole for 25 years. Codefendant Matthew Leisure entered into a comprehensive plea agreement covering the crimes in this case as well as other crimes. Leisure pleaded guilty to a first degree murder charge arising from this case. He pleaded no contest to an unrelated first degree murder charge. Finally, he pleaded guilty to another unrelated charge of attempted murder. Leisure received two concurrent sentences of life imprisonment without possibility of parole for 25 years, as well as a sentence of 25 years, which was to be served consecutively to the two life terms. Petitioner asserts that his attorney failed to present evidence of the lesser sentences received by his codefendants as a mitigating circumstance. Because his codefendants were not sentenced until after sentence was imposed on petitioner, this information was unavailable at his sentencing.

■ We find this contention of disparate treatment to be meritless as to codefendant Encinas because he was significantly less culpable than petitioner. In contrast to petitioner, Encinas was younger (18), a first offender, genuinely remorseful about his crimes, and played a much less active role in the commission of these crimes. *See State v. Gerlaugh, supra,* 135 Ariz. at 89, 659 P.2d at 642 (Cameron, J., concurring).

■ As to codefendant Matthew Leisure, the trial judge at the rule-32 hearing found that any disparate treatment did not create a substantial likelihood that a more lenient sentence was warranted. The record supports this conclusion. Petitioner was adjudged by the trial court to be the most culpable party to these crimes, because he acted as the leader of his two accomplices and received all the proceeds of their criminal wrongdoing.

There was also a sound basis in prosecutorial judgment for extending a plea offer to Leisure. The prosecutor testified at the rule-32 hearing that a plea offer was extended to Leisure only because his confession to the murder was suppressed. The only remaining evidence linking Leisure to the murder was a palm print lifted off Scott Schwartz's automobile months after the homicide. In cases wherein we have found the lesser sentence received by a codefendant to be a mitigating circumstance, there was not such a sound basis for this disparate treatment. *See State v. Lambright,* 138 Ariz. 63, 76–77, 673 P.2d 1, 14 (1983), *cert. denied,* — U.S. —, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984) (complete immunity given to an equally culpable codefendant is "appalling" because the other codefendants had already confessed); *State v. Smith,* 138 Ariz. 79, 86, 673 P.2d 17, 24–25 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984) (same holding for the other codefendant in *Lambright*) *State v. Richmond,* 136 Ariz. 312, 320, 666 P.2d 57, 65 *cert. denied,* — U.S. —, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983) (two accomplices to murder never charged).

Additionally, in the only case wherein disparate treatment of an equally culpable codefendant has been deemed to be sufficiently substantial to warrant leniency, there were fewer aggravating circumstances and other substantial mitigating circumstances. *See State v. Watson,* 129 Ariz. 60, 63–64, 628 P.2d 943, 946–47 (1981) (only two aggravating circumstances and sentence mitigated because defendant was a model prisoner, had attempted to further his education while in jail, and because the victim who was being robbed precipitated the shootout with defendant that claimed the victim's life). We find no prejudice to petitioner by the failure to present this argument. We accordingly find no ineffective assistance of counsel.

### (F) *Cooperation with the Police*

Petitioner maintains that his cooperation with the police was a mitigating factor that trial counsel should have brought to the attention of the court at sentencing. The only evidence of petitioner's cooperation with the police is that he confessed to the crimes charged. Given petitioner's lack of remorse for his crimes and the other aggravating circumstances of this case, we believe that the trial court at the rule-32 hearing acted well within its discretion in rejecting this as a substantial mitigating factor sufficient to warrant resentencing. It was not reasonably probable that addition of this mitigating factor would prevent imposition of the death penalty in this case.

The only case in which this court found cooperation with the authorities to be sufficiently substantial to warrant leniency is distinguishable because there were less serious aggravating circumstances and substantial mitigating circumstances not present in this case. See the discussion of *State v. (Alonzo) Mata,* 125 Ariz. 243, 609 P.2d 58, *cert. denied,* 449 U.S. 921, 101 S.Ct. 322, 66 L.Ed.2d 150 (1980), in *State v. Gillies, supra,* 135 Ariz. at 516, 662 P.2d at 1023, which contains information not found in the original opinion (defendant was an immature 18-year-old with no prior criminal record who did not commit the actual murder but was only an accomplice to the murder). In other cases involving less serious aggravating factors and/or more substantial mitigating factors, we have found the mitigating circumstance of cooperation with the police insufficiently substantial to warrant leniency. *See State v. Bishop,* 127 Ariz. 531, 622 P.2d 478 (1980) (one aggravating circumstance and mitigating circumstances that defendant had no prior criminal record and cooperation with the police were not enough to warrant leniency); *State v. Adamson,* 136 Ariz. 250, 665 P.2d 972 (1983) (two aggravating factors and mitigating factors of the length of the trial and cooperation with the police insufficient to call for leniency).

A court is less likely to find sufficient prejudice in an ineffective assistance of counsel case if the conviction and the aggravating circumstances are strongly

supported by the record than otherwise. *See Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 698; *State v. Nash, supra,* 143 Ariz. at 398, 694 P.2d at 228. In the present case, both the facts necessary for conviction and the aggravating circumstances are strongly supported by the interlocking confessions of petitioner and his codefendants and by other evidence as well. Additionally, the present murder, like the murder in *Strickland, supra,* involved overwhelming aggravating circumstances. There is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances. There was no prejudice, and accordingly no ineffective assistance of counsel.

## VIII. DID TRIAL COUNSEL ACQUIESCE IN THE STATE'S RECOMMENDATION OF THE DEATH SENTENCE?

 Petitioner finally charges that trial counsel agreed at the end of the presentence hearing that his client should receive the death sentence. Petitioner misreads defense counsel's statements by taking them out of context. We shall reconstruct the sequence of events.

At the hearing, defense counsel criticized petitioner's presentence report because it allegedly characterized this as an "open and shut" case for which the death penalty was required.[4] Trial counsel urged the probation officers to make a more balanced presentation of the facts of this case, including the mitigating factors present, in their supplemental presentence report. Trial counsel was particularly critical of the report's conclusion that his client had never shown any remorse either for this murder or for his prior robbery. During the presentence hearing, trial counsel remarked:

> [I]n both cases the presentence officers have indicated that they saw no particu-

lar remorse in my client for either of the acts, . . . I think in the reports, in reading them, they show, obviously, that my client is accepting the responsibility for what occurred and what his acts were. But, again, they simply relate in their opinions a lack of remorse. The thing that concerned me about that is just to tell this Court that there is no remorse. I thought, surely, someone might want to go a little deeper in that or into that or are we just saying everyone must show remorse in the same way . . . . And, it seems to me a little superficial just to say that I see the facts of this case. *It is a brutal killing. It is an atrocious killing and, therefore, he must receive the death penalty.* I don't know if the Court had any further questions about, you know, who is Darrick Gerlaugh, what brought him to this point to let me decide whether or not he should live or die. We know, obviously, one large mitigating circumstance that Mr. Gerlaugh has is his age.

Trial counsel then complained that petitioner's age is not mentioned as a mitigating factor in the presentence report. Counsel also urged that a psychiatric evaluation of petitioner could provide a more balanced view of his client's personality and could determine without guesswork whether his client actually feels remorse. Counsel conceded, however, that petitioner was competent to undergo sentencing. He also agreed that failure to order psychiatric examination may not be reversible error, even if it would be useful in determining the appropriate sentence.

Finally, trial counsel complained that even though there were persons who were available with testimony favorable to petitioner, whom the probation officers could have interviewed, they chose not to do so:

> I was also disturbed on the fact that there was no contact with my client's family, no attempts to go out and see something more. . . . . Many people are

4. By repeating trial counsel's charges against the probation officers, we do not mean to imply there was misconduct. We are merely reconstructing the sequence of events to show the proper context of trial counsel's remarks. There is no issue before this court regarding the fairness of the presentence report.

aware of the facts of this killing and are concerned about giving the Court further information .... But again I think we all have in the Probation Department as well as defense counsel [a duty] to give this Court as much information as they can about the person. And, really, those are the only comments I have at this time as far as just making the Court aware of my feelings as to whether or not the Court might want further information on this particular case *based on the fact that I think that, you know, reading the probation report, it seems to be a terrible crime in that I have never seen anything this bad before. Everyone recommends death, therefore, obviously, there is nothing good to say. That's the end of it.* I just believe that as an officer of the Court, which I am, which the probation officers are, there is a little greater obligation there as opposed to simply saying, my client has no remorse .... I, really, believe that if this Court thinks that it's decision may tip, at all, on whether or not my client is simply so cold-blooded and committed a cold blooded murder or had a remorseful situation, whether it be right afterwards or at this point in time, then I think the Court might consider asking for psychiatric evaluation and testing.

We do not believe that either of the above-underlined statements are intended to be a personal recommendation by counsel that his client should receive the death penalty. Given the context of utterance, we believe that the most plausible interpretation of these remarks is that they represent the "superficial" and "open and shut case" mentality he attributed to the probation officers. Certainly, the prosecutor and the trial judge do not register the kind of surprised reaction one would expect if a defense attorney began arguing against his client. We note that petitioner never suggested this interpretation of trial counsel's remarks to the trial judge at the rule–32 hearing, so we do not have the benefit of the trial court's determination of this issue.

At most, one might interpret trial counsel's remarks as an acknowledgment of the grevious nature of the offense. Trial counsel had already argued against two of the three aggravating circumstances, apparently without visibly impressing the trial judge. Neither trial counsel nor appellate counsel has raised a credible objection to the overpowering aggravating circumstances of this case. Under these circumstances, a tactical concession that this crime involved serious aggravating circumstances would be defensible. Even so, it is plain that trial counsel did not concede that there were no mitigating circumstances. He did in fact remind the trial court of its duty to give fair consideration to any and all mitigating circumstances. We find no ineffective assistance of counsel.

Nor do we interpret counsel's remarks as a frank confession of incompetence because he failed to present evidence regarding mitigating circumstances and attempted to shift this obligation to the probation officers. *See State v. Schultz, supra,* (defense counsel admitted that he failed to interview from 20 to 30 witnesses). It was counsel's duty as advocate for his client to encourage the inclusion of material favorable to petitioner in the supplemental presentence report, as well as to argue for a more favorable recommendation from the probation officers. It also would have made tactical sense for trial counsel to attempt to discredit the presentence report out of fear that the trial judge might follow its recommendation. Additionally, we have already shown that there was no ineffective assistance of counsel in connection with the presentation of mitigating circumstances in this case.

In closing, we note that trial counsel is certified as an expert in criminal law and has had considerable experience in death penalty cases. And, as the Supreme Court concluded, in *Strickland v. Washington, supra,* about counsel's performance under similarly difficult circumstances:

> Although counsel understandably felt hopeless about ... [defendant's] prospects ... nothing in the record indicates ... that counsel's sense of hopelessness

distorted his professional judgment. Counsel's strategy choices [were] ... within the range of professionally reasonable judgment.

*Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2070–71, 80 L.Ed.2d at 701.

There was no ineffective assistance of counsel. The order denying post-conviction relief is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.