NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.L.

No. 1 CA-JV 24-0096

FILED 04-01-2025

Appeal from the Superior Court in Maricopa County
No. JD534895
The Honorable Marvin L. Davis, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**P A T O N**, Judge:

¶1        Destiny S. ("Mother") appeals from the superior court's order terminating her parental rights to her child, J.L., born in April 2022.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        We review the evidence "in a light most favorable to sustaining" the termination order.  *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016).

¶3        When J.L. was born, hospital personnel contacted the Department of Child Safety ("Department") because Mother tested positive for illegal drugs (including fentanyl and cocaine) and J.L. was exhibiting withdrawal symptoms.  An investigator from the Department met with Mother and Isaiah L. ("Father")[1] at the hospital.  Mother disclosed abusing substances during her pregnancy.  The parents also threatened to leave the hospital with J.L. against medical advice.  As a result, the Department took temporary custody of J.L.

¶4        The Department then filed a dependency petition, alleging the parents were unable to care for J.L. because of substance abuse.  After the parents pleaded no contest to the dependency allegations, the superior court adjudicated J.L. dependent and ordered a family-reunification case plan.  The court directed the Department to provide reunification services, including drug testing, substance abuse assessment, substance abuse treatment, and supervised visitation.

¶5        In May 2022, Mother briefly went to Community Medical Services ("CMS") for methadone.  But by the end of the month, she told CMS staff that she was "doing well," and left the program.  Meanwhile, she

---

[1] Father is not a party to this appeal.

continued to test positive for illegal substances, including fentanyl and benzodiazepines.

¶6            In September 2022, the Department referred Mother to Terros/Arizona Families First because of her continued substance abuse. Although Terros employees tried to engage Mother in services, they were unsuccessful and closed her referral in October 2022.  The Department again referred Mother to Terros in May 2023, but she did not respond to calls, emails, or house calls, and Terros closed that referral as well.

¶7            During the dependency, Mother was also required to drug test.  From May 2022 to July 2023, she missed nearly 100 urinalysis tests; of the 10 or so that she did take, each was positive for illegal substances.  Her last drug test was in August 2022.

¶8            In June 2023, at the Department's request, the court changed the case plan to severance and adoption.  In July 2023, the Department moved to terminate Mother's parental rights alleging three grounds for termination: (1) substance abuse, (2) six-months' out-of-home placement, and (3) nine-months' out-of-home placement.  A.R.S. § 8-533(B)(3), (8)(a)-(b).

¶9            A few weeks later, Mother was arrested for a crime she committed a year earlier and released on bond.  She then failed to appear for sentencing.  Ultimately, she was required to serve jail time and placed on probation for three years.  Before self-reporting to jail, she returned to CMS for a methadone prescription because she did not want to go through "severe withdrawal while incarcerated."

¶10            The first day of the termination trial occurred on November 27, 2023.  By that time, J.L. had been in care for nearly 18 months, almost all of his life.  Mother was serving jail time, but she was transported to and present for trial.  The case manager testified that the primary allegation against Mother was her inability to parent due to substance abuse.  The case manager testified that the Department provided Mother with referrals to substance abuse services and testing during the dependency, but Mother failed to meaningfully participate in those services.  The case manager added that terminating parental rights would be in J.L.'s best interests because he was adoptable and his foster family wished to adopt him.

¶11            On cross examination, the case manager acknowledged that Mother probably had four months of sobriety because of her time in jail. The case manager agreed that four months of sobriety while in custody was a good start, but it did not guarantee long-term sobriety because of her long-

term drug problem. The case manager explained that Mother would need to restart her case plan after her release from custody because she had not shown sobriety before her incarceration.

¶12        During her testimony, Mother acknowledged that she continued to use drugs until she was incarcerated. But she also testified she was sober in jail and using a computer to take remote substance abuse, General Education Diploma ("GED"), and parenting classes. She explained that she was approved for a 45-day inpatient treatment program upon her release from jail. She told the superior court that once she entered inpatient treatment, she planned to restart methadone, engage in Alcoholics Anonymous classes, and do the 12-step recovery program. She also said that at that the end of the 45-day program, she planned to go to a sober living home. She asked the court for the opportunity to prove that she could parent J.L., expressing that she believed it is in his best interests to "have a chance with his mom[.]"

¶13        J.L.'s grandmother testified about how she lost her parental rights to Mother when she went to prison in 2014. She explained that she turned her life around in prison and was now in a position to support Mother and be a positive influence in her life. She also testified that Mother would have family support to help raise J.L.

¶14        Three months later, the superior court held the second day of trial. The court began by noting that Mother had testified on the first day of trial and asked Mother's counsel if he had any additional witnesses to call. Mother's counsel said Mother concluded her portion of the trial, and that what remained was Father's portion of the trial and the report and review hearing.

¶15        After Father presented his case, the superior court held the report and review hearing. Mother's counsel reported that Mother had been released from jail and was serving out the remainder of her sentence in an inpatient facility. He added that, within the next few weeks, Mother planned to go to a sober living facility. The court then took the termination matter under advisement. The court later entered orders terminating parental rights and directing the Department to submit a form of order with proposed findings of fact and conclusions of law.

¶16        In May 2024, the superior court entered the final order, finding, among other things, that Mother had a significant history of substance abuse that began when she was 17 years old and there were reasonable grounds to believe that her substance abuse problem would

continue for a prolonged indeterminate period because she failed to demonstrate sobriety and failed to complete any substance abuse services during the dependency. The court also found that J.L. had been in an out-of-home placement for nine months or longer and Mother "substantially neglected or willfully refused to remedy the circumstances that [caused J.L.] to be in an out-of-home placement."

¶17 The superior court also found that termination was in J.L.'s best interests because he was in a stable, adoptive placement and it was not in his best interests to "linger in care for an indeterminate period" because Mother had not demonstrated that she could resolve her chronic substance abuse issues. The court further noted that although Mother testified she would be released to a treatment program to serve out the remainder of her sentence before Christmas 2023, and she would be able to have visitation with J.L. at that facility, as of the end of January 2024, Mother had not contacted the Department to schedule visits. The court therefore terminated Mother's parental rights to J.L.

¶18 Mother timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1). This decision, however, was delayed because of disclosure issues in the superior court. On September 19, 2024, this court stayed the appeal because of those disclosure issues. On December 30, 2024, the Department moved to lift the stay because the disclosure issues had been resolved, which Mother did not oppose, and which this court granted.

## DISCUSSION

¶19 Mother argues the termination order should be set aside because her trial counsel was ineffective by failing to present critical information about her circumstances on the last day of the trial.

¶20 An order terminating parental rights may be set aside only if counsel's representation of the parent "was such that it undermined the fundamental fairness of the proceeding and cast doubt on the proceeding's 'protection of the individual against arbitrary action of government.'" *Royce C. v. Dep't of Child Safety*, 252 Ariz. 129, 136, ¶ 20 (App. 2021) (citation omitted). Relief for ineffective assistance of counsel is "an extraordinary remedy, unavailable in all but the most egregious cases." *Id*. at 138, ¶ 26. To grant relief on this basis, the court must find (1) that counsel's conduct was so deficient "that it denie[d] the parent fundamental fairness or shock[ed] the conscience" and (2) that but for counsel's deficient

performance, the outcome may have been different. *Id.* at 138, ¶¶ 25–26. A parent alleging ineffective assistance of counsel bears the burden of establishing his claim. *John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 325, ¶¶ 18–19 (App. 2007).

**¶21**   Mother argues that her trial counsel was ineffective because he did not call her to testify on the second day of trial about (1) the programs she completed in jail, (2) the progress she was making in inpatient treatment, (3) the length of her sobriety, and (4) the program she planned to attend after her release from inpatient treatment.

**¶22**   Mother, however, addressed these topics during her testimony on the first day of trial. Mother testified about the classes she was taking in jail and her plans to enter an inpatient treatment program after her release. Counsel introduced documentary evidence, including Mother's letter to the case manager from jail detailing her participation in classes and ability to have visits with J.L. once she entered inpatient treatment. He also cross-examined the case manager, who acknowledged that Mother had four months of sobriety while incarcerated.

**¶23**   According to Mother's counsel, her circumstances had improved as of the second day of trial. Her attorney reported that, consistent with her plea agreement, she was released from jail into an inpatient treatment program. She also presumably had four additional months of sobriety because she remained in a custodial setting. But even considering her improved circumstances, further evidence of her continued sobriety in a custodial setting would not have proved that she could maintain sobriety after her release from inpatient treatment, negating Mother's argument on appeal that her testifying on the second day of trial would have altered the outcome. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010).

**¶24**   Mother makes several other arguments that her counsel was ineffective because he did not present additional evidence at trial. She contends, for instance, that her counsel should have called her to testify about the trouble she had reaching the case manager from jail. She also contends that counsel should have introduced photos and text messages proving that she visited with J.L. until her incarceration and that the foster parents were not properly caring for J.L. She also asserts counsel should have called J.L.'s great grandmother to testify that the Department's case managers would not return her calls, that Mother had a difficult childhood, and that the family was devoted to helping Mother raise J.L.

**¶25** Mother's counsel, however, addressed these issues on the first day of trial. When Mother testified, she described her efforts to contact the case manager while in jail and her ability to have visits with J.L. once she entered the inpatient program. Mother also testified that she visited with J.L. until she went to jail in August 2023 and the visitation records, which the court admitted in evidence, support her testimony.

**¶26** The record also contains J.L.'s grandmother's testimony about Mother's difficult childhood and how Mother would have family support in raising J.L. Finally, the superior court admitted into evidence the great-grandmother's letter describing how the Department ignored her phone calls and expressing concern that J.L.'s foster parents were not properly caring for him.

**¶27** Accordingly, counsel's representation did not deny Mother a fundamentally fair trial, and the additional evidence Mother asserts counsel should have presented would not have made a "determinative difference" in the outcome of the trial. *Royce C.*, 252 Ariz. at 136, 138, ¶¶ 20, 25–26; *see also State v. Gerlaugh*, 144 Ariz. 449, 463 (1985) (noting that counsel's decisions about what evidence and witnesses to present at trial, particularly the cumulative evidence, is a strategic choice that will not support a claim of ineffective assistance of counsel).

**CONCLUSION**

**¶28** We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR