910 P.2d 635

STATE of Arizona, Appellee/Cross–Appellant,

v.

Kevin Scott ROSCOE, Appellant/Cross–Appellee.

No. CR–93–0278–AP.

Supreme Court of Arizona, En Banc.

Feb. 1, 1996.

---

**3.** A fifth complaint alleging failure to cooperate was pending while respondent was engaging in the instant conduct.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Colleen L. French, Phoenix, for State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Phoenix, for Kevin Scott Roscoe.

## OPINION

FELDMAN, Chief Justice.

Defendant Kevin Scott Roscoe has now twice been convicted of child molestation, kidnapping, and murder in the 1982 abduction and slaying of the seven-year-old victim, Laura. This court affirmed his first conviction and sentence in *State v. Roscoe,* 145 Ariz. 212, 700 P.2d 1312 (1984) (*Roscoe I* ), *cert. denied,* 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985). Roscoe was granted a new trial in state post-conviction proceedings, however, after showing that the state had offered fabricated evidence at trial.[1] On retrial in 1992, a Maricopa County jury found Roscoe guilty of the same charges and he was again sentenced to death. This appeal followed.

## FACTS AND PROCEDURAL HISTORY

At about 6:00 in the evening on May 13, 1982, Laura rode her bicycle from her parents' rural Gilbert home to look for her cat. Her family began searching for her when she did not return. A short time later, her moth-

---

1. The state called a purported expert in canine scent identification who gave extensive testimony that, approximately six months after Laura's murder, his tracking dog had linked Roscoe to the crime in a series of allegedly blind scent "line-ups." Before being revealed as a charla- tan, this "expert" gave similar testimony in numerous criminal cases around the country. *State v. Roscoe,* Maricopa County No. CR–127656, reporter's transcript of hearing on motion for new trial, Oct. 30, 1990, at 17–25.

er called the authorities after finding her bike on a nearby farm road. Laura's bound and gagged nude body was found the next morning along a remote desert road in the San Tan Mountains, approximately twelve miles from her home. Her attacker had sexually molested and strangled her. One of her socks was used to bind her hands behind her back; the other was tied around her head to hold her panties in her mouth as a gag. Her ponytail holders were tightly fastened around her neck. Her clothes and shoes were stacked next to her body.

Roscoe lived nearby and was on parole from California for a sex-related offense. He immediately became a suspect and was questioned by police. Roscoe told the police that on the evening Laura disappeared, he went to a friend's house at 5:30 p.m., where he stayed until going with others to a party around 9:00 p.m. This story was contradicted by Roscoe's friends, who said that he did not arrive at the friend's house until after dark, which would have been at approximately 8:00 p.m. Consequently, Roscoe changed his story and "remembered" that after arriving at the friend's house at 5:30, he went to a nearby convenience store, and car trouble delayed his return.

A man driving in the area saw a car similar to Roscoe's speeding away from the vicinity of the crime at about 7:30 p.m. He said the driver was, like Roscoe, a young caucasian with long brown hair. A week after the murder, Roscoe hurriedly sold that car. When police recovered it, they found evidence inside that implicated Roscoe, including hairs similar to Laura's and traces of human blood.

Other physical evidence implicating Roscoe was discovered and introduced at trial. Carpet fibers similar to the carpet from Roscoe's car were found near Laura's body. Roscoe's pubic hairs were consistent with hairs found on the victim's blouse. His semen was consistent with samples taken from the victim's · mouth. Finally, the state also introduced several other bad acts involving Roscoe's sexual improprieties with minor girls. Roscoe stuck to his alibi and challenged the physical evidence, but a Maricopa County jury found him guilty of first degree murder, kidnap-

ping, and child molestation. Concluding that several non-statutory mitigating factors did not outweigh the murder's especially cruel and heinous nature, the trial judge sentenced Roscoe to death and to consecutive, aggravated prison terms for the non-capital offenses.

On appeal, Roscoe raises the following questions:

1. Did the trial judge err by permitting the admission of other bad act evidence?

2. Was the admission of multiple photographs of the child-victim's naked corpse reversible error?

3. Did the trial judge abuse his discretion by precluding a defense expert's testimony on witness identification and memory?

4. Should the trial court have granted a mistrial after the prosecutor argued evidence not admitted at trial?

5. Did the trial court err in denying Roscoe's motion for a new trial on each individual error and on the errors cumulatively?

6. Was Roscoe's right to a unanimous jury verdict violated by not requiring the jury to agree on a single murder theory?

7. Did the trial court err by ordering Roscoe's attorneys not to present certain mitigating evidence during the sentencing phase?

8. Was it error for the trial court to find that the especially heinous, cruel, or depraved aggravating circumstance was proven beyond a reasonable doubt?

9. Did the trial court's failure to consider all relevant mitigating evidence constitute reversible error?

10. Does Arizona's death penalty statute meet constitutional standards?

We address these issues in the order presented. In addition, we address one issue raised by the state in its cross appeal: whether the trial court abused its discretion by not allowing the victim's father to testify at the sentencing phase in rebuttal to Roscoe's mitigating evidence.

## DISCUSSION

### A. Other bad acts

■ Before trial, the state filed a motion *in limine* seeking permission to introduce certain other bad acts of Roscoe under Ariz. R.Evid. 404(b), to show identity, a plan to engage in sexual acts with minors, or propensity for aberrant sexual conduct. Roscoe filed a timely response to the motion. The judge allowed the state to admit the following evidence to show modus operandi and Roscoe's emotional propensity to engage in sexually aberrant acts: (1) a prior sexual assault in California against Cheryl, (2) a sexual encounter Roscoe had with a fourteen-year-old "girlfriend," Kristi, and (3) Kristi's testimony about lewd statements that Roscoe had made to young girls (Cheryl and Kristi incidents respectively). Roscoe claims that the Cheryl and Kristi incidents were erroneously admitted for either purpose.[2] Roscoe also claims that the probative value of the other bad acts was outweighed by unfair prejudice. We look first to the admissibility of the evidence. We review these evidentiary rulings on a discretionary standard. *State v. Rivera*, 152 Ariz. 507, 515, 733 P.2d 1090, 1098 (1987).

■ Other bad acts are generally inadmissible to show the defendant's bad character. However, evidence of other bad acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz.R.Evid. 404(b). Arizona courts have recognized another specific exception to the general rule: other bad acts involving "sexual aberration" are admissible to show the defendant's propensity to commit a similar crime. *State ex rel. LaSota v. Corcoran*, 119 Ariz. 573, 583 P.2d 229 (1978); *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973). Sexual assaults on a minor of the type presented in this case are always

considered aberrant. *McFarlin*, 110 Ariz. at 228, 517 P.2d at 90.

■ Although the court admitted the Cheryl and Kristi incidents to establish both modus operandi and emotional propensity, we will affirm the court's admission if it is sustainable on either ground. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984). Roscoe did not request a limiting instruction, and the trial court's failure to *sua sponte* give a limiting instruction is not fundamental error. *State v. Taylor*, 127 Ariz. 527, 529, 622 P.2d 474, 476 (1980); *State v. Atwood*, 171 Ariz. 576, 639, 832 P.2d 593, 655 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

### 1. Cheryl incident

■ In California in 1981, Roscoe pleaded guilty to assaulting Cheryl. Over objection, the trial court admitted evidence of this prior assault. Like Laura, Cheryl had long red hair, fair skin, and freckles. She was seventeen at the time of the assault, but by all accounts she appeared younger than her age. Cheryl testified that in March of 1981, after drinking at a party and passing out in Roscoe's car, she was tied up, sexually assaulted, and left on the side of the road. The following morning, area residents discovered Cheryl sitting naked, blindfolded with a sock tied behind her head, and gagged with another sock. The knots used to tie the socks were the same type used to tie the socks that bound Laura. Cheryl's hands were also bound behind her back with a shoelace tied in similarly distinctive knots. Although Roscoe does not deny that he committed the crime, he claims that the incident should not have been admitted in the murder trial to establish modus operandi or to demonstrate an emotional propensity to engage in aberrant sexual behavior.

In *Roscoe I*, the trial court admitted evidence of the Cheryl assault only for the

---

2. Roscoe claims that the court admitted the evidence to establish *identity* and emotional propensity, although the court's minute entry clearly states that the evidence was admissible to establish *modus operandi* and emotional propensity. Identity and modus operandi are obviously closely related, if not identical, since an unrelated act with a significantly similar modus operandi may

identify the defendant as the person who committed the crime charged. *State v. Jackson*, 124 Ariz. 202, 204, 603 P.2d 94, 96 (1979). However, in *Roscoe I* we explained that under the modus operandi exception for identification, "identity in every particular is not required." *Roscoe I*, 145 Ariz. at 217, 700 P.2d at 1317.

purpose of establishing modus operandi. 145 Ariz. at 217 n. 1, 700 P.2d at 1317 n. 1. In that case, this court rejected Roscoe's argument that the evidence was inadmissible for that purpose. *Id.* at 216–18, 700 P.2d at 1316–18. After carefully describing and analyzing the evidentiary details, this court stated that "there are so many similarities between the two offenses that it could fairly be inferred that the known perpetrator of the first offense was probably the same person who committed the second." *Id.* at 217–18, 700 P.2d at 1317–18. Thus, under Ariz. R.Evid. 404(b), the evidence was properly admitted to establish modus operandi. The record in this case is substantially the same, and for the same reasons detailed in *Roscoe I,* we believe evidence of the Cheryl incident was properly admitted to show modus operandi and thus help establish the identity of Laura's killer. This conclusion makes it unnecessary to address the propriety of the court's ruling on the emotional propensity issue.

### 2. Kristi incident

At trial, the state also offered Kristi's testimony that she and Roscoe were "dating" in June of 1982, several weeks after Laura's murder, when Kristi was fourteen years old. She testified that one night at her home, she and Roscoe were watching the movie "Lipstick" when Roscoe attempted to engage in sexual contact with her. In the movie, a teacher violently rapes two young girls. Roscoe said, "That's the way women should be treated" and asked Kristi to re-enact some scenes. When she refused, Roscoe tried to unbutton her blouse. She objected, threatening to wake up her mother, and Roscoe left. Kristi also testified that Roscoe made suggestive sexual remarks to young neighborhood girls, some as young as eight years old, such as inquiring what color panties they wore.

■ The trial court allowed Kristi's testimony as evidence of Roscoe's modus operandi and of his emotional propensity to engage in aberrant sexual behavior. Roscoe argues that the acts were not sufficiently similar under the identity exception and that no proper expert foundation supported their admission for aberrant sexual propensity. The state properly concedes that the Kristi incident and the statements are not similar enough to show identity. *See Roscoe I,* 145 Ariz. at 217, 700 P.2d at 1317. On appeal, however, the state argues that they were properly admitted to show a common scheme to engage in sexual activities with minors and aberrant sexual propensity.

■ *McFarlin* established the test for the admissibility of other aberrant sexual acts, which allows the admission of some evidence without supporting expert medical testimony. 110 Ariz. at 228, 517 P.2d at 90. When, however, the other bad act and the crime charged are remote in time, or the crimes are not sufficiently similar, reliable expert medical testimony is required "to show a continuing emotional propensity to commit the act charged." *State v. Treadaway,* 116 Ariz. 163, 167, 568 P.2d 1061, 1065 (1977). For the purpose of showing emotional propensity, the trial court admitted both the Cheryl and Kristi incidents under *McFarlin,* stating that the evidence was admissible without the necessity of medical testimony. However, the court did not preclude either party from presenting such medical testimony.

Although the Kristi incident and the statements to young girls were near in time to the charged crime, we assume for the sake of argument that they are not substantially similar to Laura's murder. Thus, *Treadaway* governs and the state was required to present "reliable expert medical testimony that such a [dissimilar] act ... tends to show a continuing emotional propensity to commit the act charged." *Id.* In the present case, we believe the state provided proper foundation. Dr. Stephen Gray, a psychologist specializing in the assessment and treatment of sexual offenders and victims of sexual assault, testified for the state at the *in limine* hearing and at trial regarding the psyche of the person who committed the Cheryl and Kristi incidents.

Dr. Gray reviewed interviews of Kristi regarding the incident that occurred after watching "Lipstick" and the comments Roscoe made to young girls. Based on the interviews and the record before him, Dr. Gray

testified that the perpetrator of Kristi's assault had paraphilia of child molest, sadism, and rape, and concluded that the person involved in the incident with Kristi and the person who made the statements to young girls had a continued propensity to commit sexually deviant acts.

At the *in limine* hearing, Roscoe objected to Dr. Gray's testimony because Dr. Gray had never interviewed Roscoe and his opinions relating to Kristi and Cheryl were based on "stale" written interviews. However, Roscoe would not make himself available for an examination; nor can he point to any material difference between the written interviews on which Dr. Gray relied and Kristi's live testimony at trial. Moreover, there is no requirement that such expert testimony always be based on personal interviews to be reliable.[3] We will not disturb a trial court's ruling on the foundation for expert testimony absent a clear abuse of discretion. *State v. Stanley,* 156 Ariz. 492, 494, 753 P.2d 182, 184 (App.1988). We believe the court acted within its discretion in admitting the Kristi events and statements to show deviant propensities.[4]

### 3. Balancing prejudice and probative value

Finally, Roscoe argues that the trial court erred by allowing "bad act [to be] heaped upon bad act" without properly weighing their prejudicial value. Four rules of evidence protect defendants from the admission of unfairly prejudicial other acts: (1) Rule 402's relevancy requirement; (2) Rule 404(b)'s requirement that the evidence be admitted for a limited proper purpose; (3) Rule 105's provision for an appropriate limiting instruction if requested; and (4) Rule 403's requirement that the probative value of similar acts is not substantially outweighed by the potential for unfair prejudice. *Atwood,* 171 Ariz. at 638, 832 P.2d at 655.

The Cheryl and Kristi incidents were clearly relevant under Rule 402. Their purposes fit within the exceptions to Rule 404(b) discussed in the previous section. The incidents are also factually or conditionally relevant because the trial judge could determine that "the evidence in the record ... would permit a reasonable person to believe" that the other acts occurred and that Roscoe was the actor. *State v. Plew,* 155 Ariz. 44, 50, 745 P.2d 102, 108 (1987) (citations omitted). Roscoe did not request a limiting instruction under Rule 105. Thus, the remaining issue is whether the evidence was properly admitted under Rule 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When the admission of other bad acts is at issue, the risk of prejudice is great, but trial courts maintain considerable discretion in gauging the prejudicial effect of other bad acts. *State v. Salazar,* 181 Ariz. 87, 91, 887 P.2d 617, 621 (1995).

The trial court specifically noted that it engaged in a Rule 403 balancing test and found that the probative value of the other acts was not substantially outweighed by the danger of unfair prejudice. We agree that the Cheryl incident was extremely probative and clearly appropriate under Rule 403. Although the Kristi incident, and particularly the statements to young girls, were less probative, they were also less inflammatory. Unlike the Cheryl affair, however, they tended to link Roscoe to younger girls like the victim. Although the Kristi incident is a much closer call than the Cheryl incident, we believe the trial court did not abuse its dis-

---

**3.** In *State v. Rojas,* the court implied that the fact that the medical expert testifying about the defendant's emotional propensity "never met the children or the defendant in this case nor reviewed any of the videotapes of the victims" helped establish that the doctor's testimony was properly limited to the scope of emotional propensity, rather than the doctor's opinion of the witnesses' credibility. 177 Ariz. 454, 459, 868 P.2d 1037, 1043 (App.1993).

**4.** Roscoe also called Dr. Ian Lanyon, an expert witness, to rebut Dr. Gray's conclusion that Roscoe has an emotional propensity for sexual deviance.

494

cretion in admitting the evidence with Dr. Gray's foundation. *See Atwood,* 171 Ariz. at 638–39, 832 P.2d at 655–56 (approving admission of statements showing deviant interest in children).

## B. Admitting multiple photographs of the child's naked corpse

■■■ Trial courts have broad discretion to admit photographs in criminal trials. *State v. Salazar,* 173 Ariz. 399, 406, 844 P.2d 566, 573 (1992), *cert. denied,* 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). A three-part inquiry governs the admissibility of photographs: "(1) relevance; (2) tendency to incite or inflame the jury; and (3) probative value versus potential to cause unfair prejudice." *State v. Murray,* 184 Ariz. 9, 28, 906 P.2d 542, 561 (1995); Ariz.R.Evid. 401–403. "Photographs are relevant if they aid the jury in understanding an issue." *Murray,* 184 Ariz. at 28, 906 P.2d at 561. Moreover, even if the defendant stipulates to the manner of death, some photographs of victims depicting important aspects of the crime are relevant to show what actually occurred. *State v. Walden,* 183 Ariz. 595, 611, 905 P.2d 974, 990 (1995); *State v. Amaya–Ruiz,* 166 Ariz. 152, 170, 800 P.2d 1260, 1278 (1990), *cert. denied,* 500 U.S. 929, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). If a photograph is relevant, the court must determine if it is inflammatory and, if so, whether the danger of unfair prejudice substantially outweighs the photograph's probative value. *Amaya–Ruiz,* 166 Ariz. at 170, 800 P.2d at 1278; Ariz. R.Evid. 403.

■■■ Roscoe argues that fourteen photographs should not have been admitted because they are unduly prejudicial, not relevant to disputed facts, or cumulative. The state claims the judge properly admitted the photographs on disputed issues and that they are not inflammatory or unfairly prejudicial.

Roscoe first challenges the admission of Exhibits 207, 208, and 209: three black and white aerial photographs of the area where Laura's body was found, taken on May 14, 1982. The photographs are clearly relevant

to show the scene of the crime, the remoteness of the area, the relationship of Laura's body to the road, and the general terrain. They were taken at such a distance that Laura's body is hardly visible and thus are not inflammatory. The trial court did not abuse its discretion in admitting these photographs.

Exhibits 66 and 67 are autopsy photographs depicting Laura's face and neck, with the ligature strangulation marks caused by the ponytail holders clearly visible. Although these pictures most graphically display Laura's injuries, they are relevant to show the similarity between the ligature marks on Laura to those on Cheryl after her assault. Given that the facts were explicitly detailed in live testimony, we do not believe the photographs are so inflammatory that they unduly prejudiced the jury.

The remaining photographs portray Laura's body at the scene. Exhibit 40 is a side view of Laura lying nude on her stomach with her legs spread apart. Her clothing and shoes are beside her, her hands are tied behind her back with a pink sock, and a pink sock is tied around her head. The photograph is relevant to illustrate the testimony of the witnesses who described Laura's body at the crime scene,[5] the lividity of her body, and the disturbed soil around her feet. More important, the photograph also depicts the similarity between Laura's murder and the Cheryl incident, specifically with regard to how one sock was tied around her head and the other used to bind her hands behind her back. Although this picture is difficult to look at given the horrible nature of the crime and the young age of the bound and helpless victim, the picture is not unfairly inflammatory or prejudicial given its important probative purpose and the atrocious nature of the crime. Admission of this photograph was not an abuse of discretion.

Photographs 43 and 44 depict two different angles of Laura's feet, which show their discoloration, her flexed and dirty toes, and the disturbed soil underneath her feet. The pic-

5. James Serpa, the Maricopa County Sheriff's Evidence Technician who took the photographs, and Kay Lines, special agent at the Attorney General's office, testified about the condition of Laura's body as it was found.

tures are somewhat relevant to explain the state in which Laura's body was found. The pictures show only Laura's feet and are therefore not gruesome or unduly inflammatory.

Photographs 47, 48, and 49 are close-ups of Laura's head, shoulder area, and back. The pictures are relevant to illustrate how she was gagged with her underwear, how her ponytail holders were fastened around her neck to strangle her, and how her hands were bound behind her back with her sock. The pictures are particularly relevant to establish the similarity between Laura's murder and Cheryl's attack, since both victims were strangled and bound.

Photograph 51 depicts a portion of Laura's head as it lay at the scene. Outstretched from her forehead is a ruler indicating the distance from her head to a carpet fiber that matched the carpet fibers in Roscoe's car. This photograph is relevant to explain the testimony regarding the location of important physical evidence at the scene.

Photograph 170 is a close up of the back of Laura's right thigh and buttock, showing a "patterned abrasion" on the back of her thigh similar to a hand print. This picture is relevant to show the application of force prior to death and to explain the medical examiner's testimony regarding the abrasion.

Photograph 172 depicts Laura's full body at the scene and its relationship to impressions that were interpreted to be bare footprints in the sand. The photograph is relevant in light of the testimony of a convenience store clerk that Roscoe frequently went into the store barefoot, especially because he had gone to that same convenience store on the evening of Laura's murder.

As noted, almost all of the photographs are quite relevant to disputed issues, particularly the similarity of Laura's murder to the Cheryl incident. Additionally, although very disturbing because of the young victim, they are not particularly gruesome or unduly prejudicial given the nature of the crime. We find no clear abuse of discretion in their admission. *State v. Chapple*, 135 Ariz. 281, 288, 660 P.2d 1208, 1215 (1983).

### C. Preclusion of a defense expert on eyewitness identification and memory

Eleven days after the murder, a witness told police that he saw a vehicle like Roscoe's with a driver that looked like Roscoe speeding away from the area of the murder. The witness testified at the first trial, and his testimony was read into the record at Roscoe's second trial. Roscoe moved to have an expert testify about eyewitness identification and the "forgetting curve," but the trial court denied the motion. Roscoe argues that precluding this expert's testimony was an abuse of discretion. We disagree.

Expert testimony is admissible if it "will assist the trier of fact to understand the evidence." Ariz.R.Evid. 702. In *Chapple*, a case dealing with the admission of expert testimony on eyewitness identification, we stated four criteria that should be applied in determining the admissibility of the expert testimony: (1) qualified expert; (2) proper subject; (3) conformity to a generally accepted explanatory theory; and (4) probative value compared to prejudicial effect. 135 Ariz. at 291, 660 P.2d at 1218 (citing *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973)). Expert opinion on eyewitness identification will not frequently meet the standard for proper subject, however, and a trial court's discretionary ruling generally will be upheld. *Id.* at 297, 660 P.2d at 1224 ("[W]e do [not] invite opinion testimony in even the most extraordinary case on the likelihood that a particular witness is correct or mistaken in identification or that eyewitness identification in general has a certain percentage of accuracy or inaccuracy.").

Key factors in determining the admissibility of expert testimony on eyewitness identification include the importance of the eyewitness testimony and the presence or absence of other evidence linking the defendant to the crime. *State v. Poland*, 144 Ariz. 388, 399, 698 P.2d 183, 194 (1985), *aff'd*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). The trial judge here reasoned that expert opinion was unnecessary because the state's case did not hinge on the witness's testimony and because other physical evi-

dence linked Roscoe to the crime. With regard to the other evidence, the trial court stated:

> There are the matching carpet fibers, the pubic hair, the defendant's admission that he was in the area where the body was found, hair similar to the victim's in the defendant's car, and human blood similar to the victim's in the defendant's car ... In addition, there are the similarities between the crime alleged and the other acts involving [Cheryl and Kristi].

Roscoe urges that no other evidence linked him to the crime and consequently expert testimony on eyewitness identification was appropriate.

We agree with the trial court that a substantial amount of additional evidence linked Roscoe to the crime. Thus, the case against him did not depend on this eyewitness, who did not positively identify Roscoe or his car. Roscoe himself admitted he was driving in the vicinity on the evening in question, and substantial other physical and circumstantial evidence placed him in the area. Moreover, there was substantial cross examination to attack the witness's testimony. The trial court properly concluded that the jurors could understand the eyewitness evidence based on their common experience. *See* Ariz.R.Evid. 702. There was no abuse of discretion in denying Roscoe's motion to present expert testimony on eyewitness identification.

### D. Did the trial court improperly deny a mistrial after the state argued evidence not admitted at trial?

At the first trial, Howard Woods testified that at 6:30 on the evening of the murder, he saw a car similar to Roscoe's turn from the victim's street and drive erratically toward the location where Laura's body was found. He noted that the car's right brake light was inoperative. The state established that Roscoe's right brake light was also inoperative. Although Woods was deceased at the time of the second trial, *defense* counsel added Woods to his list of witnesses so that the transcript of his testimony could be read to the jury. For unknown reasons, defense counsel never introduced Woods' testimony.

During closing arguments at the second trial, the prosecutor summarized Woods' testimony despite the fact that it had not been read into the record. Apparently both parties believed it had been read in, since defense counsel had listed Woods as a witness and did not immediately object when the state argued his testimony in closing. Not until the court took a recess did the parties realize that Woods' testimony was not a part of the record. Based on this fact, during this recess Roscoe moved for a mistrial. The trial court denied Roscoe's motion, reasoning the testimony was cumulative and the error could be cured by the following instruction:

> But I need to instruct you now that during [the prosecutor's] opening [sic] argument, he made reference to testimony of Howard Woods. There never was any testimony of Howard Woods read to this jury, so you are therefore instructed to disregard anything that was said about Howard Woods' testimony, that whatever comments made by [the prosecutor] are stricken from the record and are not to be considered by you at all, whatsoever, in any way. Just forget that he said them.

■ This instruction was read to the jury immediately upon reconvening from the recess. Additionally, prior to any closing arguments the court instructed the jury that "any testimony stricken from the court record should not be considered," and "what the lawyers have said [in opening] and will say [in closing argument] is not evidence." Roscoe argues that the trial court abused its discretion by denying his motion for a mistrial. The state concedes error but claims it was cured by the instruction.

■ The trial court "is in the best position to determine whether [an] attorney's remarks require a mistrial, and its decision will not be disturbed absent plain abuse of discretion." *State v. Dumaine*, 162 Ariz. 392, 403, 783 P.2d 1184, 1195 (1989). Two factors inform this analysis: (1) whether the remarks called improper matters to the jury's attention, and (2) the probability under the circumstances that the improper remarks influenced the jury's verdict. *Id.* Prejudice does not necessarily follow from improper

argument. *State v. Mincey*, 130 Ariz. 389, 410, 636 P.2d 637, 658 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982).

Here, the argument was clearly improper because it referred to matters not in evidence. However, Roscoe made no objection until the argument was complete, thus waiving any objection except denial of his subsequent motion for a mistrial, made after he realized what had occurred. We believe, therefore, that the trial court was within its discretion to conclude that the instruction cured the error so that the remarks did not influence the verdict. The testimony mentioned the victim's home street and tended to place Roscoe near the crime scene at 6:30 p.m., undermining his alibi. However, Roscoe admitted being in the area on the night in question, and another witness saw a car similar to Roscoe's speeding away from near the scene. Roscoe's own witnesses were equally harmful to his alibi. Moreover, carpet fibers and other physical evidence directly linked Roscoe's car to the location of the body.

Roscoe argues that the instruction could not cure the error because "the cat was already out of the bag" and the damage could not be erased. However, it was Roscoe's failure to timely object that allowed the proverbial cat to escape. If the testimony were really as prejudicial as Roscoe now argues, we believe he would have recognized it and objected at the time, given that Woods was listed as a *defense* witness. The argued portion of Woods' testimony was largely cumulative to other evidence, and the import of the testimony was not great compared to the other physical and circumstantial evidence incriminating Roscoe. We conclude the court did not abuse its discretion in denying the mistrial motion based on an untimely objection.[6]

**E. Did the trial court err in denying Roscoe's motion for a new trial on each individual error and on the errors cumulatively?**

Roscoe moved for a new trial based on the errors alleged in the four previous arguments. He argues the trial court abused its discretion in denying that motion on each ground. Alternatively, he argues that "these numerous errors, taken together, deprived him of a fair trial."

As explained above, in each of the four previous claims there was either no error at all or no prejudice to Roscoe. Thus, denying Roscoe's new trial motion was within the court's discretion. *See State v. Fisher*, 141 Ariz. 227, 251, 686 P.2d 750, 774 (1984), *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). Moreover, this court has rejected the so-called cumulative error doctrine, reasoning that something that is not prejudicial error in and of itself does not become such error when coupled with something else that is not prejudicial error. *State v. White*, 168 Ariz. 500, 508, 815 P.2d 869, 877 (1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *State v. Prince*, 160 Ariz. 268, 274, 772 P.2d 1121, 1127 (1989). The trial court properly denied Roscoe's motion for a new trial.

**F. Was Roscoe's right to a unanimous jury verdict violated by permitting a capital conviction without requiring the jury to agree on a single murder theory?**

The jury received three first degree murder instructions: (1) premeditation, (2) felony murder/kidnapping, and (3) felony murder/child molesting. Six jurors found premeditation and six found felony murder. Roscoe argues he was entitled to unanimity on one theory of capital murder under the Eighth and Fourteenth Amendments to the United States Constitution, and under article 2, section 23 of the Arizona Constitution.

---

6. The facts do not indicate any intentional impropriety by the prosecutor. On the contrary, the prosecutor's improper argument is an easily understood inadvertence resulting from testimony that was admitted in a prior trial, that all parties expected would be offered, and apparently believed had been. The error could have been cured by allowing either party to reopen and present the testimony as a housekeeping matter. *State v. Walton*, 159 Ariz. 571, 582, 769 P.2d 1017, 1028 (1989), *aff'd*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (trial courts afforded broad discretion in permitting a party to reopen to admit evidence).

We reject Roscoe's argument. This court has held that a defendant is not entitled to unanimity on the theory of first degree murder. *State v. Schad,* 163 Ariz. 411, 417, 788 P.2d 1162, 1168 (1989), *aff'd,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). We are not persuaded that we should abandon this position.

### G. Did the trial court erroneously order Roscoe's attorneys not to present all relevant mitigating evidence during the sentencing phase?

After his conviction, Roscoe twice attempted suicide. As a result, several doctors, including Dr. Donald Tatro, evaluated Roscoe and found him competent for the sentencing hearing. Roscoe later filed a *pro se* motion to exclude Dr. Tatro's seventeen-page report and to preclude his testimony at the mitigation hearing. The trial judge sealed the reports and transferred the motion to another judge, who granted it in part, relying on *People v. Lang,* 49 Cal.3d 991, 264 Cal.Rptr. 386, 782 P.2d 627 (1989) (finding no ineffective assistance where trial counsel agrees to defendant's request not to call his grandmother in mitigation hearing, reasoning that client has the final say),[7] *cert. denied,* 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 178 (1990). Although portions of Dr. Tatro's report were redacted, to which Roscoe objected, Roscoe's counsel put on substantial other mitigating evidence, including another doctor's psychological report.

#### 1. Self-representation

Roscoe now argues that, in complying with the request made in his *pro se* motion, the court denied him his Sixth Amendment right to counsel by interfering with his counsel's mitigation strategy. In the alternative, Roscoe claims he was inappropriately permitted to represent himself without a valid waiver of his Sixth Amendment right to counsel. To support his argument, Roscoe attempts to distinguish *Lang* and cites American Bar Association (ABA) guidelines and Arizona law. We are not persuaded.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to self representation. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Sixth Amendment also guarantees an indigent defendant the right to representation by counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). When a defendant concurrently has self-representation and representation by counsel, hybrid representation results. *Murray,* 184 Ariz. at 27, 906 P.2d at 560. Although hybrid representation is not a constitutional right and is disfavored, it is permitted at the discretion of the court. *State v. Cornell,* 179 Ariz. 314, 878 P.2d 1352 (1994).

Rightly or wrongly, the court allowed Roscoe to have self representation by considering and granting his *pro se* motion while appointed counsel continued to represent him. Assuming *arguendo* that hybrid representation occurred here, it was within the court's sound discretion under the circumstances of this case. *Id.* at 325, 326, 878 P.2d at 1363, 1364; *see also Montgomery v. Sheldon,* 181 Ariz. 256, 261, 889 P.2d 614, 619 (1995) (alternative representation, a form of hybrid representation, occurs when a defendant switches back and forth between self-representation and representation by counsel), *op. supp.,* 182 Ariz. 118, 893 P.2d 1281 (1995). Having been afforded the best of all worlds, this competent defendant cannot now claim that granting his *pro se* motion interfered with his Sixth Amendment rights. Those rights were protected to both extremes, allowing competent self-representation and full appointed representation at trial and sentencing.[8] There was no abuse of

---

7. The full text of Dr. Tatro's report is part of the record before us. Thus, we are aware of the nature of the information that Roscoe wanted excluded, and we can well understand Roscoe's wishes that it not be made public. They were reasonable. Honoring those wishes, we do not detail the evidence. However, we believe that the redacted portion of the report is of no significant value to Roscoe's case.

8. Roscoe did not ask for a *Faretta* hearing on competency, although he was found competent by the trial court pursuant to a Rule 11 hearing. *See* Ariz.R.Crim.P. 11. Moreover, the judge who granted the motion *in limine* found that "Dr.

discretion in granting Roscoe's motion *in limine,* and Dr. Tatro's report was properly redacted.

Even assuming that counsel's effectiveness is at issue, Roscoe's authority does not provide relief. Roscoe cites *State v. Lee,* 142 Ariz. 210, 689 P.2d 153 (1984),[9] and ABA guidelines for the proposition that "the decision as to what witnesses to call is a tactical, strategic decision" resting with counsel, while the client chooses only the overall goal, such as whether to argue against the death penalty. ABA Standard 4–5.2(b) at 4–65. Roscoe's reliance on *Lee* and the ABA standards is misplaced.

*Lee* and the ABA guidelines merely direct that the right to effective assistance "does not include the right to require [one's] lawyer to perpetrate a fraud on the court" by calling witnesses likely to commit perjury. *Lee,* 142 Ariz. at 216, 689 P.2d at 159. A rule aimed at preventing perjured testimony is not authority for allowing counsel to ignore a competent client's reasonable wish not to present certain mitigating evidence.

### 2. Interference with counsel's strategy

In dealing with a defendant's request that counsel not present certain mitigating evidence, this court has stated that "an attorney's decisions concerning representation can properly be influenced by his client's wishes." *State v. Gerlaugh,* 144 Ariz. 449, 459, 698 P.2d 694, 704 (1985) (citing *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)). Deference is especially appropriate under the circumstances before the trial court in this case, where the

client's request involves a strong privacy interest. *Gerlaugh,* 144 Ariz. at 459, 698 P.2d at 704. Moreover, we note that A.R.S. § 13–703(C) places the burden on the defendant to proffer mitigating evidence, which must be proved by a preponderance of the evidence. *State v. Fierro,* 166 Ariz. 539, 551, 804 P.2d 72, 84 (1990). That the burden is on the defendant reinforces the conclusion that his personal decision not to present certain mitigating evidence is within his discretion.

No authority supports Roscoe's view that the procedure here resulted in ineffective assistance or an invalid waiver of counsel. On the contrary, the Supreme Court has suggested that there is no constitutional violation when a defendant chooses to put on no mitigating evidence. *Blystone v. Pennsylvania,* 494 U.S. 299, 306 n. 4, 110 S.Ct. 1078, 1083 n. 4, 108 L.Ed.2d 255 (1990) (affirming death sentence where "[a]fter receiving repeated warnings from the trial judge, and contrary advice from his counsel, petitioner decided not to present any . . . mitigating evidence."). Moreover, this court has read Dr. Tatro's report in its entirety and does not believe that the information in the redacted report would have changed the result of the mitigation hearing.

The hallmark of the Eighth Amendment is that the sentencer be allowed to consider any mitigation that the defendant proffers. *Blystone,* 494 U.S. at 304, 110 S.Ct. at 1082. That happened here. Roscoe had valid family and personal reasons to preclude certain information in Dr. Tatro's report, and Roscoe got exactly what he wanted. Roscoe's counsel continued to represent him, putting on other mitigation and arguing eloquently for leniency at the mitigation

Tatro's report leaves little room for doubt that Defendant is competent to make this decision." After a careful review of the record and the presentencing report, including Dr. Tatro's report in its entirety, we are also wholly convinced of Roscoe's competence. Roscoe's statement that "nothing in the record shows that [he] was ever cautioned about the dangers and disadvantages of his decision, nor was any inquiry ever made as to whether this was a knowing, voluntary, or intelligent decision," is entirely without merit.

9. *Lee* involved a lawyer who acquiesced to his client's adamant demands that he present testi-

mony of two witnesses that counsel believed would perjure themselves and undermine the defense case. 142 Ariz. at 212, 689 P.2d at 155. After presenting the testimony, counsel moved to waive closing arguments because he could not "get up in front of the jury and make an argument based on what [he was] positive . . . was perjured testimony." *Id.* at 213, 689 P.2d at 156. The finding of ineffective assistance in *Lee* rested on the trial counsel's decision to waive closing arguments, which was not a tactic requested by the defendant. *Id.* at 219, 689 P.2d at 162.

hearing. The court did not abuse its discretion in allowing Roscoe to withhold Dr. Tatro's report.

## H. Did the trial court err in finding that the especially heinous, cruel, or depraved aggravating circumstance was proved beyond a reasonable doubt?

Pursuant to A.R.S. § 13–703(D), the trial court entered a special verdict indicating the existence of aggravating factor (F)(6), "that the murder was committed in an especially heinous, cruel, or depraved manner." This court has a duty to independently review the existence of aggravating or mitigating factors to determine if imposition of the death penalty is proper. *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). A.R.S. § 13–703(F)(6) is disjunctive, and a finding of either cruelty or heinous/depraved conduct is sufficient. *State v. Kiles*, 175 Ariz. 358, 370, 857 P.2d 1212, 1224 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994).

### 1. Cruelty

To prove a murder was especially cruel, the state must prove beyond a reasonable doubt that the victim consciously suffered physical pain or emotional distress. *State v. Bible*, 175 Ariz. 549, 604, 858 P.2d 1152, 1207 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1993). The record here contains abundant evidence of both. The victim was conscious when she was abducted, stripped, and bound. Roscoe forced the victim to fellate him before gagging her with her panties. The mental anguish she must have felt is unimaginable. Medical testimony also showed that the vaginal assault was excruciatingly painful and that the victim struggled to survive, for perhaps four to five minutes, after being strangled. Beyond any doubt, this murder was especially cruel.

### 2. Heinous/Depraved

Although the cruelty finding fully supports the (F)(6) factor, the trial court also found the heinous or depraved element. With a few exceptions not relevant here, heinous or depraved conduct is found by examining five factors: (1) relishing the murder, (2) inflicting gratuitous violence, (3) victim mutilation, (4) senselessness, and (5) helplessness of the victim. *State v. Gretzler*, 135 Ariz. 42, 52–53, 659 P.2d 1, 11–12, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In its special verdict, the trial court found that the killing was senseless and that the victim was helpless. The trial court also found that Roscoe relished the murder, demonstrated by the "aberrant sexual propensities of the Defendant which led directly to the murder."

Senselessness and helplessness clearly apply. However, these factors, absent additional aggravation, are usually insufficient alone to establish heinousness or depravity. *State v. Barreras*, 181 Ariz. 516, 522, 892 P.2d 852, 858 (1995). That Roscoe relished the murder based on his sexual deviancies is less evident.

Relishing generally refers to the defendant's actions or words that show debasement or perversion. *State v. Walton*, 159 Ariz. 571, 587, 769 P.2d 1017, 1033 (1989), *aff'd*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Intuitively, the nature of Laura's murder is clearly debased and perverse. But in most cases in which relishing is established, we require that the defendant say or do something, other than commission of the crime itself, to show he savored the murder. *E.g., State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988) (approving relishing factor where defendant bragged about raping and murdering child victim), *aff'd*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *State v. Lambright*, 138 Ariz. 63, 75, 673 P.2d 1, 13 (1983) (staging victory celebration after the murder), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984); *State v. Clark*, 126 Ariz. 428, 437, 616 P.2d 888, 897 (1980) (saving souvenir bullet and bragging to friends), *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). The relishing factor is also conspicuously absent from recent child sex cases. *E.g., Bible*, 175 Ariz. 549, 858 P.2d 1152; *Atwood*, 171 Ariz. 576, 832 P.2d 593. Given the precedent and lack

of evidence in the record to indicate to the contrary, we do not believe the record and our previous cases support the trial court's finding of relishing. We decline to create further questions concerning the validity of aggravating circumstances by acceding to requests to continually expand the definitions of the language used in the statutes pertaining to aggravating circumstances. *Richmond*, 114 Ariz. at 196–97, 560 P.2d at 51–52.

However, because this murder was extremely cruel beyond any doubt, we affirm that finding under A.R.S. § 13–703(F)(6), making Roscoe eligible for the death penalty.

## I. Failure to consider all relevant mitigating evidence

In its special verdict, the trial court found that Roscoe failed to establish the existence of any statutory mitigating factors.[10] The court found that the following non-statutory mitigating circumstances were established by a preponderance of the evidence: (1) adoption of new goals including education and art; (2) employment history; (3) conduct while incarcerated and during trial; and (4) love of family. Roscoe argues that the trial court failed to give proper mitigating weight to his lack of prior felony convictions and his psychological history as documented by Dr. Blackwood. We disagree.

Roscoe is correct that he does not have a prior felony record because his prior assault charge on Cheryl was reduced by a plea bargain from a felony to a misdemeanor. Although not classified as a felony, this prior assault was nonetheless violent. To be considered as a non-statutory mitigating factor, Roscoe must establish that this circumstance exists by a preponderance of the evidence. *State v. McMurtrey*, 143 Ariz. 71, 691 P.2d 1099 (1984), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 530 (1987); A.R.S. § 13–703(G). Given the nature of the prior plea-bargained misdemeanor, especially in light of its similarity to the crime charged, we find no error in the court's refusal to give

mitigating weight to Roscoe's lack of a prior felony conviction.

We also find no error in the court's weighing of Dr. Blackwood's psychological report. Dr. Blackwood concluded that "the current test results do not document the presence of any neuropsychological condition which would appear to have any relevance in the current case." There was simply nothing in this report from which the court could have found substantial mitigation. The trial court properly considered and weighed all the statutory and non-statutory mitigating factors, and our independent review does not change those findings.

## J. Constitutionality of Arizona's sentencing scheme and death penalty

Roscoe's final four arguments address constitutional issues. First, Roscoe argues that A.R.S. § 13–703(F)(6) violates equal protection by permitting the state to give different definitions to the word "cruel." This argument was rejected by *Walton v. Arizona*, 497 U.S. 639, 653–55, 110 S.Ct. 3047, 3056–58, 111 L.Ed.2d 511 (1990), *aff'g Walton*, 159 Ariz. 571, 769 P.2d 1017.

Second, Roscoe argues that Arizona's death penalty statute fails to adequately channel sentencing discretion and that the (F)(6) factor is unconstitutionally vague. These arguments were considered and rejected in *State v. Gulbrandson*, 184 Ariz. 46, 906 P.2d 579 (1995); *State v. Henry*, 176 Ariz. 569, 589, 863 P.2d 861, 881 (1993); *Walton,* 159 Ariz. at 584, 769 P.2d at 1030.

Third, Roscoe argues that A.R.S. § 13–703 denied him equal protection of the law because in capital cases, a judge determines the existence of aggravating factors while in non-capital cases, a jury makes that determination. The premise that non-capital defendants are afforded a jury determination on aggravating factors is incorrect. *See*

---

10. Roscoe only offered evidence of one statutory mitigating factor: age. The court did not find that Roscoe established that his age, nineteen at the time of the murder, was a mitigating factor

by a preponderance of the evidence because Roscoe had previously been convicted of a similar violent, though non-fatal, offense.

A.R.S. § 13–702(D). Nonetheless, there is no equal protection right to a jury determination on aggravating circumstances prior to imposing the death penalty. *See Fulminante,* 161 Ariz. at 258, 778 P.2d at 623; *see also Clemons v. Mississippi,* 494 U.S. 738, 745–46, 110 S.Ct. 1441, 1446–1447, 108 L.Ed.2d 725 (1990).

Finally, Roscoe contends that proportionality review is required. This court has rejected that argument. *Salazar,* 173 Ariz. at 411, 844 P.2d at 578; *see also Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

We are not persuaded to abandon the cited precedents in favor of Roscoe's constitutional arguments and thus we affirm A.R.S. § 13–703 as constitutional.

## THE STATE'S CROSS APPEAL

 In the sentencing hearing, the state offered the testimony of Laura's father to rebut Roscoe's mitigating evidence. The trial court sustained Roscoe's objection to this testimony. The state argues that rejection of this evidence was an abuse of discretion, basing its argument on *Payne v. Tennessee,* in which the Court stated:

[I]f the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.

501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), *overruling in part Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). We have agreed that to the extent allowed by *Payne,* victim impact evidence may be considered by the court to rebut the defendant's proffered mitigation at the sentencing hearing. *State v. Bolton,* 182 Ariz. 290, 896 P.2d 830 (1995); *State v. Gonzales,* 181 Ariz. 502, 892 P.2d 838 (1995), *cert.*

*denied,* —— U.S. ——, 116 S.Ct. 720, 133 L.Ed.2d 673; *Atwood,* 171 Ariz. 576, 832 P.2d 593.

According to the state's response to Roscoe's motion to preclude the testimony, Laura's father would have testified about the devastating loss inflicted on Laura's family by her murder. Roscoe argues that Laura's father was properly precluded because his testimony was not relevant to rebutting the content of Roscoe's mitigating evidence. The issue is moot in this case because we have affirmed Roscoe's sentence. *State v. Johnson,* 147 Ariz. 395, 401, 710 P.2d 1050, 1056 (1985). Nonetheless, because the issue is often raised, we believe it best to clarify the type of victim impact evidence admissible in capital sentencing. *See Big D Construction Corp. v. Court of Appeals,* 163 Ariz. 560, 563, 789 P.2d 1061, 1064 (1990) (although issues are moot, supreme court may exercise discretion to reach merits when opposing positions on issues are fully briefed); *State v. Valenzuela,* 144 Ariz. 43, 44, 695 P.2d 732, 733 (1985) (this court will exercise discretion to decide moot issues where the issues are important and affect public interest).

 To the extent that the state's proffered rebuttal evidence would have focused on the impact of the crime on the victim's family, and would thus comport with *Payne,* the evidence was relevant. However, it is difficult to think of a case in which sentencing recommendations by the victim's survivors would be relevant to rebut mitigating evidence. Although there may be such a case, this is not it, and the court would have erred in admitting such evidence. *State v. Williams,* 183 Ariz. 368, 386, 904 P.2d 437, 455 (1995) (citing *Bolton,* 182 Ariz. at 315, 896 P.2d at 855). To the extent the testimony by Laura's father would have recommended Roscoe's punishment, it was properly excluded.

## CONCLUSION

As required by A.R.S. § 13–4035, we have searched the record for fundamental error

and have found none.[11] Roscoe's conviction and death sentence are affirmed.

ZLAKET, V.C.J., and MOELLER, CORCORAN and MARTONE, JJ., concur.

910 P.2d 654

**CBM OF ARIZONA, INC., dba Collection Consultants, Inc., Plaintiff/Appellee,**

v.

**Carolyn SEVIER, a single woman, Defendant/Appellant.**

No. 2 CA–CV 95–0168.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 11, 1996.

---

11. The convictions in this capital case were appealed, briefed, and argued before the effective date of the repeal of A.R.S. § 13–4035. *See* 1995 Laws, ch. 198, § 1.